EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re: | 2017 TSPR 143 |
| Hon. Sylkia Carballo Nogueras<br>Jueza Superior<br>Tribunal de Primera Instancia | 198 DPR ____ |

Número del Caso: AD-2015-2

Fecha: 2 de agosto de 2017

Abogados de la querellada:

      Lcdo. Guillermo Figueroa Prieto
      Lcdo. Mario Rodríguez Torres

Abogados de la parte querellante:

      Lcdo. Felix Fumero Pugliessi
      Lcda. Cristina Guerra Cáceres
      Lcda. Isabel Sánchez del Campo

Materia: Resolución del Tribunal con Voto particular de conformidad y Votos particulares disidentes.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Sylkia Carballo Nogueras
Jueza Superior                    AD-2015-2
Tribunal de Primera Instancia

RESOLUCIÓN

En San Juan, Puerto Rico, a 2 de agosto de 2017.

La Oficina de Administración de los Tribunales presentó una querella contra la Hon. Sylkia Carballo Nogueras, en la cual formuló dos cargos por violaciones a los Cánones 8, 20(i), 23 y 34 de Ética Judicial, 4 LPRA Ap. IV-B. La Comisión de Disciplina Judicial, tras examinar la Querella presentada por la Oficina de Administración de los Tribunales y la Contestación a la Querella, presentada por la Hon. Sylkia Carballo Nogueras, recomendó que desestimáramos y archiváramos la querella, ya que determinó que la conducta de la juez Carballo Nogueras no violentó los Cánones de Ética Judicial. Tras evaluar el informe de la Comisión de Disciplina Judicial y el expediente de las partes, acogemos la determinación de la Comisión de Disciplina Judicial y ordenamos que se archive la querella.

Lo acordó el Tribunal y lo certifica el Secretario del Tribunal. El Juez Asociado señor Martínez Torres emitió un Voto particular de conformidad, al cual se unieron la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Kolthoff Caraballo. La Jueza Presidenta Oronoz Rodríguez emitió un Voto particular disidente, al cual se unió la Juez Asociada señora Rodríguez

Rodríguez. La Juez Asociada señora Rodríguez Rodríguez hace constar la siguiente expresión:

> Me uno a las expresiones de la Jueza Presidenta Oronoz Rodríguez recogidas en su Voto particular disidente. Sólo deseo expresar mi preocupación por la evidente inconsistencia de la mayoría al atender asuntos disciplinarios de miembros de la judicatura del país, según demuestran nuestras más recientes actuaciones. Por alguna razón, la mayoría se muestra en extremo severa en algunas circunstancias mientras que en otras, como el asunto ante nuestra consideración, opta por infravalorar y minimizar conducta que es contraria a las normas éticas de nuestra profesión. Tal parece que al bajar la marea nos ha dejado en la orilla una doble vara para medir.

El Juez Asociado señor Colón Pérez emitió un Voto particular disidente. El Juez Asociado señor Rivera García no intervino.

Juan Ernesto Dávila Rivera
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:


Hon. Sylkia Carballo Nogueras
Jueza Superior                    AD-2015-2
Tribunal de Primera Instancia


Voto particular de conformidad emitido por el Juez Asociado señor MARTÍNEZ TORRES, al cual se unieron la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor KOLTHOFF CARABALLO.


En San Juan, Puerto Rico, a 2 de agosto de 2017.

Estoy conforme con el archivo de la querella presentada contra la Hon. Sylkia Carballo Nogueras. Entiendo que de los hechos que tenemos ante nuestra consideración no podemos concluir que existe una violación de los Cánones 8, 20(i), 23 y 34 de los Cánones de Ética Judicial, infra. Aseverar que la juez Sylkia Carballo Nogueras violentó estos cánones significa que los jueces tendrán que vivir aislados de la comunidad a la que pertenecen. Eso, como veremos a continuación, es lo contrario a lo que estos cánones pretenden lograr.

Pero aquí se nos plantea algo más fundamental. En este proceso se sometió a una juez a una suspensión sumaria por un rumor de periódico que fue desmentido de inmediato. Al insistir en la imposición de medidas disciplinarias por otros asuntos, la Administración de Tribunales pretende, de alguna forma, "lavarse la cara" de la mancha que tiene por el abuso que cometió. Este Tribunal no debe tolerar esa conducta administrativa.

I

La Hon. Sylkia Carballo Nogueras inició su carrera judicial el 15 de enero de 1999, cuando fue nombrada juez municipal. Luego, fue ascendida a juez superior el 5 de enero de 2007. Entre el 12 de septiembre de 2007 y el 16 de marzo de 2015, la Hon. Carballo Nogueras ejerció el cargo de juez en el Centro Judicial de Caguas. Específicamente, la juez Carballo Nogueras tuvo a su cargo la sala de vistas preliminares en el Centro Judicial de Caguas entre julio de 2009 y agosto de 2014.

El 22 agosto de 2014, el periódico El Vocero publicó una nota donde reseñó que la juez Carballo Nogueras era objeto de una investigación por el Negociado Federal de Investigaciones, mejor conocido por sus siglas en inglés como FBI. A raíz de esto, el mismo 22 de agosto de 2014 la entonces Juez Presidenta del Tribunal Supremo de Puerto Rico, Hon. Liana Fiol Matta, emitió una orden administrativa para relevar temporeramente, con paga, a la juez Carballo Nogueras de sus funciones judiciales.

Posteriormente, el periódico El Vocero reseñó unas expresiones hechas por el Sr. Carlos Cases, entonces Director del FBI en Puerto Rico, donde este desmintió que la juez Carballo Nogueras estuviese siendo investigada por la mencionada agencia federal. Pese a la aclaración que realizó el periódico EL Vocero el 25 de agosto de 2015, la entonces Directora de la Oficina de Administración de los Tribunales (OAT), Hon. Sonia I. Vélez Colón, investigó la conducta de la juez Carballo Nogueras. De esta investigación surgen los hechos que narraremos a continuación y que dan pie a las presuntas violaciones éticas que se le imputan a la juez Carballo Nogueras en la querella que hoy tenemos ante nuestra consideración.

Como parte de la investigación, funcionarios de la OAT visitaron el Centro Judicial de Caguas. Allí, se reunieron con el Juez Administrador Regional, Hon. Lind O. Merle Feliciano, quien les informó sobre un viaje a Orlando, Florida, que había realizado la juez Carballo Nogueras junto a su esposo, Edgardo Aldebol, alguacil de la Región de Caguas. También surgió de la entrevista que para la misma fecha viajaron a Orlando el Lcdo. Jan Mangual Mangual, entonces fiscal de la región de Caguas, y la Lcda. Ana L. González Cabrera, quienes postulaban en su sala. Tras conocer esta información, los funcionarios de la OAT realizaron entrevistas y declaraciones juradas al licenciado Mangual Mangual y a la licenciada González Cabrera.

De la información provista surge que el licenciado Mangual Mangual se desempeñó como fiscal en el Centro Judicial de Caguas desde el año 2011 hasta marzo de 2012. Durante el periodo que laboró en Caguas fungió como fiscal en la sala de vistas preliminares que atendía la Hon. Carballo Nogueras. En el mes de agosto de 2011, al concluir una vista en la que estaba participando, el fiscal Mangual Mangual permaneció en la sala conversando con la juez Carballo Nogueras sobre asuntos no relacionados al trabajo. Este tipo de conversación entre personas que se ven las caras todos los días, sobre asuntos que no tienen que ver con temas judiciales, es común en los tribunales una vez finalizan los trabajos en sala.

Durante la conversación surgió que el fiscal Mangual Mangual tenía unas vacaciones programadas durante ese mes y planificaba ir a la ciudad de Fort Lauderdale, Florida, con el propósito de visitar a su familia, como era su costumbre hacer varias veces al año. A renglón seguido, la juez Carballo Nogueras le comentó que por coincidencia, ella también iría de vacaciones junto a su esposo a Orlando, Florida, durante el mes de agosto. El fiscal Mangual Mangual expresó que hacía tiempo que no iba a Orlando y la Hon. Carballo Nogueras le sugirió que podía ir en automóvil desde Fort Lauderdale. Para el fiscal Mangual Mangual no era conveniente conducir hasta la ciudad de Orlando, por lo que decidió cambiar su pasaje

para volar de San Juan a Orlando y posteriormente ir de Orlando a Fort Lauderdale. Los viajes de ida y de regreso a Puerto Rico del fiscal **no coincidieron** con el de la juez Carballo Nogueras y su esposo. Además, el licenciado Mangual Mangual realizó reservaciones **por su cuenta** para su estadía en Orlando en el mismo hotel en donde se quedaron la juez Carballo Nogueras y su esposo. La impresión de que la juez organizó unas vacaciones con el fiscal no es correcta.

Asimismo, durante el mes de agosto de 2011, la licenciada González Cabrera se enteró de los viajes que iban a realizar a Orlando, Florida, la juez Carballo Nogueras y su esposo, así como el fiscal Mangual Mangual, cada cual por separado. Entonces, la licenciada González Cabrera decidió viajar, también por separado, a la ciudad de Orlando, con el propósito de visitar a su familia. Además, para esa fecha también viajaron a Orlando un abogado que trabajaba con la licenciada González Cabrera y una amiga de este. De la prueba surge que el licenciado Mangual Mangual estuvo tres o cuatro días en la ciudad de Orlando y la licenciada González Cabrera estuvo alrededor de dos días en esa misma ciudad. En algún punto todos compartieron algunos instantes en Orlando.

En abril de 2014, previo a la publicación de la nota periodística que dio lugar al relevo de la juez de sus funciones y sin conocerse motivo alguno, el Hon. Merle Feliciano, Juez Administrador de la Región de Caguas,

entrevistó a la juez Carballo Nogueras con relación al viaje que realizó a Orlando en agosto de 2011. La juez explicó lo que se le pidió sobre el viaje y, además, solicitó reunirse con la entonces Directora Administrativa de la OAT. Tras finalizar la reunión, la entonces Directora Administrativa de la OAT concluyó que los señalamientos contra la juez Carballo Nogueras eran meramente **una excusa para atacar su labor como juez** y que **no había prueba** sobre hechos específicos que dieran lugar a una acción disciplinaria. Parece que meses después, la Directora Administrativa cambió de opinión, en reacción a un rumor falso.

Por otra parte, de la investigación realizada surgió, también, que la juez Carballo Nogueras fue invitada a varias actividades sociales mientras se desempeñaba como juez en la región judicial de Caguas, al igual que otros jueces, fiscales y abogados del área. En ellas coincidió con otros jueces, fiscales y abogados, entre ellos la licenciada González Cabrera y el licenciado Mangual Mangual. En una ocasión, la licenciada González Cabrera celebró su cumpleaños y en sus propias palabras decidió invitar "a todo el mundo". Declaración jurada de la Lcda. Ana Luisa González Cabrera, pág. 10. La juez Carballo Nogueras asistió a la fiesta de cumpleaños, en la que coincidió con otros jueces, fiscales y abogados de la región. Igual que otros jueces de la región, la juez Carballo Nogueras siguió atendiendo casos en donde

postulaban el fiscal Mangual Mangual y la licenciada González Cabrera. A manera de ejemplo, entre el 2002 y marzo de 2014, la juez Carballo Nogueras atendió 479 casos penales en los cuales los imputados estuvieron representados por la licenciada González Cabrera. De estos, se determinó causa probable para acusar en 228 (47.6%).

La Comisión de Evaluación Judicial examinó el desempeño de la juez Carballo Nogueras en el 2005, 2010 y 2013. En la evaluación judicial que se le realizó en 2005 resultó "muy bien calificada" en los renglones de integridad y reputación. De igual modo, en la evaluación realizada en 2010 se encontró a la juez "muy bien calificada" en el renglón de integridad y "bien calificada" en los renglones de reputación e imagen pública. Finalmente, en la evaluación hecha en 2013 se le encontró "muy bien calificada" tanto en el renglón de integridad como en el renglón de reputación o imagen pública.

Una vez culminada la investigación y luego de la notificación de la queja a la Hon. Carballo Nogueras, la Oficina de Asuntos Legales de la OAT presentó ante la Comisión de Disciplina Judicial un informe con los hallazgos de la investigación, para que se determinara si había causa probable para presentar una querella. Conforme con la Regla 13 de Disciplina Judicial, 4 LPRA Ap. XV-B, la Comisión de Disciplina Judicial encomendó a la

comisionada Delia Lugo Bougal que evaluara el informe e hiciera esa determinación. Esta determinó que existía causa probable para presentar una querella. Cabe destacar que en la misma resolución donde se determinó causa probable también se recomendó que la juez Carballo Nogueras se reintegrara a su labor como juez, pues no había razón para la suspensión sumaria que se le impuso.

Por otro lado, la OAT presentó una querella el 24 de marzo de 2015, en la que formuló dos cargos contra la Hon. Carballo Nogueras por violaciones de los Cánones 8, 20(i), 23 y 34 de Ética Judicial, 4 LPRA Ap. IV-B. Específicamente, el primer cargo indicó que la juez "incurrió en conducta incorrecta y poco prudente al compartir en actividades sociales con abogados que postulaban frecuentemente en su sala". Imputó que la juez "promovió e invitó al Fiscal Mangual y a la Lcda. Ana González Cabrera, a que compartiera con ella y con su esposo durante el disfrute de sus vacaciones... en el mismo hotel..." de Orlando. También, señaló que la juez Carballo Nogueras "confraternizó en otras actividades de índole social con sus amigos, el fiscal Mangual y la licenciada González, como en celebraciones de cumpleaños y fiestas de navidad". Según el primer cargo imputado, esta conducta violó los Cánones 8, 20(i), 23 y 34 de Ética Judicial, íd.

Por su parte, el segundo cargo indicó que la Hon. Carballo Nogueras violó los Cánones 8, 20(i), 23 y 34 de

Ética Judicial, íd., al "intervenir, en lugar de inhibirse, en aquellos casos en los que frecuentemente postulaban ante ella sus amigos, el fiscal Mangual y la licenciada González". Según la querella, esto "pudo generar dudas sobre su imparcialidad." Según la OAT, eso constituyó una "apariencia de parcialidad o prejuicio".

La juez Carballo Nogueras respondió a la querella y negó la comisión de las faltas éticas que se le imputaron. En su contestación señaló que la información publicada en el periódico El Vocero, la cual fue la causa para que fuese removida sumariamente de sus funciones como juez, resultó ser falsa. Como ya mencioné, la OAT investigó años antes lo relacionado con el viaje a Orlando y concluyó que no ameritaba el inicio de un proceso disciplinario. Tan es así, que cuando se halló causa probable contra la juez se le autorizó a reintegrarse nuevamente a sus funciones judiciales. En cuanto a los encuentros sociales que tuvo con el fiscal y la abogada que postulaban frecuentemente en su sala, la juez alegó que fueron incidentales y casuales, y que la evidencia demuestra que no afectaron su función adjudicativa. Detalló que tanto las evaluaciones que se le realizaron como las estadísticas de los casos que presentó en su sala la licenciada González Cabrera confirman que atendió las controversias que le fueron presentadas con la imparcialidad e integridad requerida a la hora de adjudicar.

Luego de los trámites procesales de rigor, la Comisión de Disciplina Judicial emitió su informe. En él concluyó que la conducta de la juez Carballo Nogueras no violentó los Cánones de Ética Judicial, por lo que recomendó el archivo de la querella. La Comisión de Disciplina Judicial concluyó categóricamente que de la evidencia presentada no surge la existencia de prueba clara, robusta y convincente de que la juez Carballo Nogueras cometió las faltas éticas que se le imputaron. Específicamente, surge del informe de la Comisión que no hay prueba de que la capacidad de la juez para adjudicar controversias se viera comprometida luego de los encuentros sociales que tuvo con el fiscal Mangual Mangual y con la licenciada González Cabrera. También concluyó que tampoco hay evidencia de que el comportamiento de la juez en sala demostrara parcialidad a favor de cualquiera de los dos letrados. Por otro lado, la Comisión determinó que el viaje y las actividades sociales a las que asistió la juez Carballo Nogueras, en donde había abogados, jueces y otros miembros de la comunidad legal de Caguas, no constituyeron un patrón que fuera incompatible con el cargo de juez.

Con ese informe y los alegatos de las partes, el caso quedó sometido a nuestra consideración para que emitamos la decisión final.

II

La Constitución de Puerto Rico asignó a este Tribunal la facultad de atender los procedimientos disciplinarios que se lleven a cabo contra los miembros de la judicatura. Art. V, Sec. 11, Const. PR, LPRA, Tomo 1. Con el propósito de cumplir este mandato constitucional, adoptamos los Cánones de Ética Judicial, 4 LPRA Ap. IV-B. Véanse, In re Quiñones Capacetti, 195 DPR 281, 286 (2016); In re Acevedo Hernández, 194 DPR 344, 359 (2015); In re Quiñones Artau, 193 DPR 356, 376 (2015).

Los primeros cánones de ética judicial en Puerto Rico se aprobaron en 1957. Se enmendaron en 1977 para atemperarlos al Código modelo de conducta judicial de la American Bar Association, aprobado en 1972. Informe de la Comisión y proyecto de cánones, pág. 1. Finalmente, los Cánones de Ética Judicial en Puerto Rico se enmendaron por última vez en 2005. De acuerdo al historial de los Cánones de Ética Judicial, supra, los conceptos generales de estos cánones provienen de los Cánones de Ética Judicial de 1977. Sin embargo, se incorporaron ciertos cambios que se detallan en los comentarios oficiales.

Estos cánones establecen normas mínimas de cómo se debe comportar toda persona que asume el cargo de juez. In re Grau Acosta, 172 DPR 159, 170 (2007). Además, los Cánones de Ética Judicial buscan asegurar que los miembros de la judicatura exhiban un comportamiento idóneo y ejemplar, tanto en sus vidas públicas como privadas, que le permita ejercer sus funciones judiciales de forma que

preserven la confianza y el respeto que el pueblo tiene en nuestro sistema judicial. Preámbulo de los Cánones de Ética Judicial, supra. Véanse, además, In re Grau Acosta, supra, págs. 170-171; In re Quiñones Capacetti, supra, pág. 286; In re Acevedo Hernández, supra, págs. 360-361; In re Claverol Siaca, 175 DPR 177, 188 (2009). Con el propósito de honrar la independencia e integridad que requiere el cargo, los jueces deben mostrar entereza, convicción e imparcialidad en su comportamiento. In re Velázquez Hernández, 162 DPR 316, 324 (2004).

Con esto en mente debemos analizar los Cánones 8, 20(i), 23 y 34 de Ética Judicial, supra, que presuntamente violó la jueza Carballo Nogueras.

III

A.    Canon 8

El Canon 8 de Ética Judicial, supra, indica:

Canon 8. Desempeño de funciones adjudicativas

Para el cabal desempeño de sus funciones, las juezas y los jueces serán laboriosos, prudentes, serenos e imparciales. Realizarán sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley, libre de cualquier influencia ajena, de instigaciones, presiones, amenazas o interferencias, ya sean directas o indirectas, provenientes de cualquier fuente o por cualquier razón. Enmarcarán sus funciones adjudicativas en el estudio del Derecho y en la diligencia orientada hacia el empeño de descubrir los hechos esenciales de cada controversia.

La conducta de las juezas y de los jueces ha de excluir la posible apariencia de que son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias.

El propósito de este canon es que los jueces actúen de forma imparcial, serena y prudente al atender los casos. In re Quiñones Artau, supra, pág. 377. Además, se les requiere actuar de forma independiente y libre de cualquier influencia externa. Íd. En otras palabras, los jueces no pueden usar de forma indebida el poder que les da su cargo. In re Claverol Siaca, supra, pág. 190. Este canon, también, requiere que los jueces actúen libre de cualquier apariencia de parcialidad. In re Grau Acosta, supra, pág. 171; In re Ramos Mercado, 170 DPR 363, 394 (2007). Esto requiere que los jueces analicen y evalúen

cómo otras personas percibirían sus actuaciones o expresiones. Íd.

En el Código modelo de conducta judicial de la American Bar Association (ABA) de 1990, no hay un canon igual al nuestro. Esa versión del código era la que estaba vigente cuando se aprobaron los nuevos Cánones de Ética Judicial en 2005. El Canon 2A de ese Código modelo requiere que los jueces ejerzan sus funciones judiciales de manera imparcial. Según surge del propio comentario del Canon 2A, también se requiere que los jueces eviten cualquier apariencia de imparcialidad. Asimismo, el comentario indica que el criterio para determinar si existe apariencia de imparcialidad en las actuaciones del juez es si el ciudadano común percibe esa conducta en particular como una que crea una apariencia de parcialidad. Íd. Este es un criterio objetivo, que como veremos más adelante, es igual al análisis que hemos adoptado en los casos de inhibición. Es lógico que analicemos estos casos utilizando un criterio objetivo y que observemos detenidamente las particularidades de cada caso. No hacerlo de esta manera conllevaría disciplinar a los jueces en circunstancias en las que no existe evidencia de su alegada parcialidad.

B.   Canon 20(i)

Por otro lado, el Canon 20 de los Cánones de Ética Judicial, supra, tiene el propósito de preservar la apariencia de imparcialidad y la ecuanimidad que debe

tener un juez, ya sea de hecho o de apariencia. Véase, In re Ortiz Rivera, 163 DPR 530, 536 (2004). Este canon menciona las instancias en las que los jueces tienen que inhibirse de los casos que tienen ante sí. Entre ellas, el inciso (i) de este canon, que es el que nos ocupa en este caso, requiere que el juez se inhiba "[p]or cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia". Canon 20 de los Cánones de Ética Judicial, supra. Véase también, R. R. Torres Torres, Cánones de Ética Judical de Puerto Rico, Año 9 (Núms. 1-4) Forum 17 (1993). Esto significa que no es necesario que se pruebe parcialidad o prejuicio por un juez, sino que basta con que exista la mera apariencia de parcialidad, para que un juez se tenga que inhibir de un caso. Pueblo v. Martés Olán, 103 DPR 351, 355 (1975).

Como ya hemos mencionado, al igual que en el caso del Canon 8, supra, el criterio para evaluar si un juez debe inhibirse porque existe duda sobre su imparcialidad, es objetivo. Se exige que cada caso se analice "desde el punto de vista de un observador razonable, bien informado, con el conocimiento de todos los datos y las circunstancias relevantes al caso, incluyendo aquellas que son de conocimiento general, como las que no están a la luz". Ex parte Andino, 152 DPR 509, 512 (2000). Véanse, además, In re Colton Fontán II, 154 DPR 776, 795 (2001); In re Campoamor Redín, 150 DPR 138, 151 (2000). Los jueces

deben ser rigurosos al aplicar este análisis para evitar recusaciones indebidas. Torres Torres, supra, pág. 17. Para realizar el análisis es necesario examinar los hechos del caso, los documentos del expediente y el derecho aplicable. In re Colton Fontán II, supra, pág. 795.

De acuerdo con lo que indica este canon, los jueces están impedidos de actuar de una forma que lacere la imagen de imparcialidad y sobriedad que tiene la judicatura. In re Campoamor Redín, supra, pág. 152. Además, es importante tener en cuenta que no basta que el juez resuelva de acuerdo con la ley y lo que le dicta su conciencia, sino que tiene que transmitir a las partes el convencimiento de que han tenido su día en corte. Íd.

Hay que dejar claro, sin embargo, que las relaciones sociales entre el juez y los abogados que postulan en su sala no siempre conllevan la inhibición del magistrado. Por ejemplo, en otras jurisdicciones no se ha ordenado la inhibición de jueces por el mero hecho de que han compartido en restaurantes con otros abogados. Véase, Demoulas v. Demoulas Super Markets, Inc., 703 N.E.2d 1141, 1147 (Mass. 1998). Es normal que sea así, pues los jueces también son abogados y es de esperar que muchas de sus amistades también lo sean.

Para determinar si se justifica la inhibición de un juez hay que evaluar la totalidad de los hechos del caso, particularmente las circunstancias y la frecuencia de las reuniones sociales con los abogados. L. W. Abramson,

*Appearance of Impropriety: Deciding When a Judge's Impartiality "Might Reasonably Appearance be Questioned"*, 14 Geo. J. Legal Ethics 55, 97 (2010). De hecho, en Puerto Rico, el inciso (d) de la Regla 63.1 de Procedimiento Civil, 32 LPRA Ap. V, permite que los jueces atiendan casos cuando tienen relaciones de amistad con los abogados que postulan en su sala, siempre y cuando esta relación no frustre los fines de la justicia.

    C.    Cánones 23 y 34

    Finalmente, los Cánones 23 y 34 de Ética Judicial, supra, tratan sobre la conducta que deben tener los jueces en las actividades extrajudiciales en que participan. Se consideran actividades extrajudiciales todas aquellas actividades que los jueces realizan fuera de los tribunales. S. Steidel Figueroa, La regulación de las actividades extrajudiciales de los jueces en Puerto Rico y Estados Unidos, 1ra ed., México, Ed. Suprema Corte de Justicia de la Nación, 2007, pág. 13. La regulación de este tipo de actividades incluye las actividades recreativas y sociales a las que los jueces asisten, así como las relaciones sociales que estos puedan tener. Íd.

    Aunque regular las actividades extrajudiciales de los jueces pudiera parecer excesivo, en realidad no lo es. Íd. La legitimidad y confianza que tienen los ciudadanos en la Rama Judicial no solo se basa en que los jueces resuelvan los casos conforme a Derecho, sino que también está influenciada por el comportamiento de los jueces en las

actividades sociales en que participan. Íd., pág. 14. Al asumir el cargo de juez, estos aceptan las limitaciones y restricciones a su vida privada que conlleva el cargo. Preámbulo de los Cánones de Ética Judicial, supra. Véase también, Steidel Figueroa, op. cit., pág. 17.

Conforme a lo anterior, el Canon 23 de Ética Judicial, supra, requiere a los jueces comportarse en público "de manera que sus actuaciones no provoquen dudas sobre su capacidad para adjudicar imparcialmente las controversias judiciales[,] no deshonren el cargo judicial y no interfieran con el cabal desempeño de sus funciones judiciales". Véase también, In re Claverol Siaca, supra. Del historial del Canon 23, supra, surge que su propósito es establecer una norma general sobre el comportamiento que deben mostrar los jueces en las actividades en que participen fuera de los tribunales. Hemos expresado al respecto:

> Este canon va dirigido a pautar una norma de conducta general que responde a la alta estima y confianza públic[a] que gozan los miembros de la Judicatura. Así, pues, se espera que los jueces, a través de sus acciones, no lesionen la imagen del Sistema Judicial. Es por esto que la función judicial requiere que los jueces se comporten conforme lo exige su cargo, tanto dentro como fuera del tribunal, y que su comportamiento se dirija a enaltecer el cargo que ocupan y fomentar el respeto hacia éste. (Citas omitidas). In re Claverol Siaca, supra, pág. 190. Véase también, In re Quiñones Artau, supra, págs. 383-384.

Además, el historial del Canon 23, supra, menciona que la norma general que codifica este canon es similar al

Canon 4A del <u>Código modelo de conducta judicial de la ABA de 1990</u>. Este último indica:

> *Extra-judicial Activities in General. A judge shall conduct all of the judge's extra judicial activities so that they do not:*
> (1)    *Cast reasonable doubt on the judge's capacity to act impartially as a judge;*
> (2)    *Demean the judicial office; or*
> (3)    *Interfere with the proper performance of judicial duties.*

Al respecto, se destaca que "[s]eparar completamente a un juez de las actividades extrajudiciales no es posible o conveniente; un juez no debe aislarse de la comunidad en la que vive". (traducción nuestra). Comentario al Canon 4A del <u>Código modelo de conducta judicial de la ABA de 1990</u>. ("*Complete separation of a judge from extra-judicial activities is neither possible nor wise; a judge should not become isolated from the community in which he lives.*"). Cabe destacar que esta oración se encontraba en el primer párrafo del Canon XXIV de 1977, 4 LPRA Ap. IV-A (ed. 2002). Surge del historial que el Canon 23 de los Cánones de Ética Judicial, <u>supra</u>, se añadió con el propósito de sustituir esta oración.

Asimismo, el comentario del Canon 4A del <u>Código modelo de conducta judicial de la ABA de 1990</u>, añade que hay ocasiones en que el comportamiento extrajudicial de los jueces puede crear una duda razonable en terceras personas sobre la capacidad de estos para actuar de manera imparcial. De igual modo, el primer párrafo del antiguo Canon XXIV de los Cánones de Ética Judicial de 1977,

supra, indicaba que las actividades extrajudiciales que
tenían proscritas los jueces eran solamente aquellas que
levantaban dudas sobre si su juicio era imparcial. Al
respecto expresamos:

> El principio de imparcialidad judicial está
> también plasmado en el Canon XXIV de Ética
> Judicial, 4 L.P.R.A. Ap. IV-A. Éste le impone al
> juez el deber de ser escrupuloso para así evitar
> actuaciones que razonablemente puedan dar lugar a
> la impresión de que sus relaciones sociales, sean
> éstas de familia, de amistad o de negocio,
> influyen de alguna manera en su ánimo judicial.
> Sin embargo, esto no significa que el juez tenga
> que vivir en el aislamiento. In re Ortiz Rivera,
> supra, págs. 536-537.

Precisamente debido a que no es conveniente que los
jueces estén aislados de la sociedad, lo que este canon
exigía era que el juez participara en las actividades
extrajudiciales con "comedimiento, justa medida, prudencia
[y] razonabilidad". Torres Torres, supra, pág. 26. Como
mencionamos anteriormente, el actual Canon 23 de Ética
Judicial, supra, adoptó una norma similar a la del Canon
4A del Código de Ética Judicial de la ABA de 1990. Este
último indica claramente que los jueces pueden participar
de todas las actividades extrajudiciales siempre y cuando
eviten conductas que razonablemente puedan dar la
impresión de que su juicio está comprometido. Es por eso
que para poder concluir que un juez violentó este canon
hay que analizar los hechos de cada caso en particular y
ver si razonablemente su conducta causa una apariencia de
parcialidad. Esa norma se recogió íntegramente en el Canon
23 actual, supra.

El antiguo Canon XXIV de Ética Judicial de 1977, supra, catalogaba como impropias una serie de actividades extrajudiciales. Entre ellas encontramos la que hoy día está contenida en el Canon 34 de Ética Judicial, supra. Allí se prohíbe que los jueces acepten invitaciones a actividades sociales cuando estas provienen de abogados que postulan con frecuencia ante ellos:

Canon 34. Actividades sociales

Las juezas y los jueces no aceptarán invitaciones para compartir en actividades sociales cuando provienen de abogadas y abogados que con frecuencia comparecen ante la sala que presiden. Tampoco aceptarán invitaciones de personas o abogados y abogadas cuyos intereses hayan estado, estén o sea probable que vayan a estar ante la consideración de las juezas o de los jueces. Se exceptúan las actividades sociales que organiza el Colegio de Abogados, sus delegaciones y otras organizaciones profesionales de abogados, educativas y culturales, y las ceremonias organizadas por entidades bona fide para reconocer a las juezas o a los jueces por méritos literarios, artísticos, cívicos, académicos, deportivos, científicos o aportaciones jurídicas. Canon 34 de los Cánones de Ética Judicial, supra.

El propósito del Canon 34 de Ética Judicial, supra, es proteger la imparcialidad que deben mostrar los jueces al desempeñar sus funciones judiciales. Por eso proscribe su participación en actividades sociales que puedan dar la impresión de que el juez está desempeñándose movido por influencias externas y no basándose en su propio juicio. Comentario del Canon 34 del Código de Ética Judicial, supra.

Cuando interpretamos los Cánones de Ética Judicial seguimos la misma norma de hermenéutica que aplica cuando

se va a interpretar una ley: Hay que interpretar los cánones en conjunto y no de forma aislada. A.C.A.A. v. Yantín, 103 DPR 59, 60 (1974). Es por esto que este canon hay que verlo en conjunto con la norma general que establece el Canon 33 de Ética Judicial, supra. De esta forma, este canon no contiene una prohibición absoluta, por lo que hay que evaluar la conducta extrajudicial del juez para ver si una persona puede concluir que la conducta da la impresión razonable de que el magistrado está actuando movido por presiones externas. Para esto hay que hacer un análisis objetivo tomando en consideración todos los hechos del caso.

IV

Como hemos mencionado, la figura del juez es sumamente importante en nuestra sociedad. In re Acevedo Hernández, supra, pág. 364. Así, para determinar si un juez cometió una falta disciplinaria tiene que existir prueba clara, robusta y convincente de que existe una violación ética. In re Quiñones Artau, supra, pág. 386. Este es un estándar más riguroso que el de preponderancia de la prueba, pero menos riguroso que el de prueba más allá de duda razonable. Este estándar se cumple cuando el juzgador tiene una convicción duradera de que los hechos alegados son altamente probables. Íd. Como hemos reiterado en varias ocasiones, la razón para utilizar este estándar de prueba es que hay que ser sumamente cautelosos en los procesos disciplinarios que se llevan contra los jueces,

debido al rol importante que ellos tienen en nuestra sociedad. Íd.

V

Evaluados los hechos de este caso a la luz del derecho antes expuesto, la conclusión es que la Hon. Sylkia Carballo Nogueras no violentó los Cánones 8, 20(i), 23 y 34 de Ética Judicial, supra.

A. Cánones 8 y 20(i)

Existe una relación entre los cánones 8 y 20(i) de Ética Judicial, supra. Mientras el Canon 8, supra, proscribe la apariencia de parcialidad del juez a la hora de adjudicar, el Canon 20(i) de Ética Judicial, supra, establece una causa de inhibición cuando existe apariencia de parcialidad en la conducta del juez. Véase, In re Suárez Marchand, 159 DPR 724, 737 (2003). Es por esto que al evaluar si una juez incumplió con estos cánones, como mencionamos anteriormente, hay que hacer un examen objetivo, tomando en cuenta si una persona común, a la luz de todos los hechos, puede concluir que la conducta de la juez está parcializada.

Según las determinaciones de hechos del Informe de la Comisión, la juez Carballo Nogueras compartió con el fiscal Mangual Mangual y la licenciada González Cabrera, tanto en actividades sociales como en la ciudad de Orlando, Florida, en agosto de 2011. Sin embargo, la juez querellada presentó evidencia estadística sobre los 479 casos que la licenciada González Cabrera había llevado en

su sala entre 2002 y 2014. Como mencionamos, del total de los casos presentados se determinó causa probable en 228 casos. Además, del expediente surge incontrovertido el relato de que, en abril de 2014, la juez Carballo Nogueras sostuvo una reunión con el Juez Administrador de la Región de Caguas, en la cual fue cuestionada sobre el viaje a Orlando, Florida, que realizó en agosto de 2011. Para aclarar cualquier duda que existiera por el viaje, la juez solicitó una reunión con la entonces Directora de la OAT. Al final de ese proceso, **la OAT concluyó** que los señalamientos contra la juez Carballo Nogueras iban dirigidos a atacar su labor judicial y que, por lo tanto, **no había violaciones éticas que investigar**. Además, **todas las evaluaciones** que se le hicieron a la juez demuestran que **siempre ha realizado su labor de manera íntegra y emitiendo un juicio imparcial**. Por lo tanto, la prueba presentada no demuestra de manera clara, robusta y convincente que la juez Carballo Nogueras mostrara una conducta parcializada en los casos que llevaron en su sala el fiscal Mangual Mangual y la licenciada González Cabrera.

En fin, la independencia de criterio de la juez Carballo Nogueras no se afectó. El análisis objetivo que los cánones requieren conduce a la conclusión de que tampoco estamos ante una situación de apariencia de parcialidad. Es importante que ante este tipo de situación seamos rigurosos en el análisis que hagamos y tomemos en

cuenta todas las particularidades del caso. Esto se debe a que el juez tiene un rol vital en nuestra sociedad y juzgarlo indebidamente atenta contra la credibilidad y la confianza que tiene el pueblo en la Rama Judicial.

B. Canon 23

Los Cánones de Ética Judicial no prohíben totalmente que los jueces participen en actividades extrajudiciales. Sin embargo, el Canon 23, supra, les impide participar en aquellas actividades que razonablemente puedan crear dudas sobre su imparcialidad.

Surge de los hechos probados ante la Comisión que la juez Carballo Nogueras tuvo un encuentro casual en Orlando, Florida, con el fiscal Mangual Mangual y con la licenciada González Cabrera. Además, la juez Carballo Nogueras asistió a varias fiestas organizadas por la licenciada González Cabrera, como por ejemplo una fiesta de cumpleaños de esta última. En esas actividades sociales, la juez Carballo Nogueras compartió con otros jueces, abogados y fiscales de la Región Judicial de Caguas. De la prueba presentada no podemos concluir que estos encuentros sociales crearon dudas razonables sobre la imparcialidad de la juez.

El encuentro en Orlando, Florida, ocurrió de manera incidental y no fue uno que la juez coordinó. Además, la evidencia demuestra que el fiscal Mangual Mangual y la licenciada González Cabrera no fueron favorecidos por la juez cuando postularon casos en su sala. Ante la ausencia

de prueba clara, robusta y convincente, tenemos que concluir que la juez Carballo Nogueras tampoco violó este canon.

C. Canon 34

Por otro lado, del texto del Canon 34 de los Cánones de Ética Judicial, supra, surge que los jueces no pueden recibir invitaciones de abogados que postulan en su sala. Sin embargo, como ya mencionamos, este canon hay que analizarlo en conjunto con el Canon 23 de los Cánones de Ética Judicial, supra. De esta forma hay que analizar si la conducta del juez crea la impresión razonable en el público de que su juicio está influenciado por presiones externas. Al examinar los hechos que tenemos ante nuestra consideración concluimos que la juez Carballo Nogueras no incumplió con ese canon. Las invitaciones que ella recibió fueron para asistir a fiestas, junto a otros jueces, fiscales y abogados, y celebrar eventos específicos, de los cuales ninguno fue para agasajarla a ella. Además, no existe prueba de que era una costumbre frecuente que ella fuera invitada por abogados que postulan en su sala, sino que ha sido para eventos especiales abiertos a todos en la Región Judicial de Caguas. De hecho, me llama la atención que de todos los jueces que asistieron a la fiesta solo se cuestionara y encausara a la juez Carballo Nogueras. ¿Acaso la licenciada González Cabrera no postulaba ante más nadie?

De acuerdo a lo esbozado anteriormente, concluyo -al igual que la Comisión de Disciplina Judicial- que la juez Carballo Nogueras no violentó ninguno de los Cánones de Ética Judicial imputados. Por lo tanto, coincido con la comisión en que debe archivarse la querella.

VI

Además de lo anterior, es inescapable afirmar que este caso nunca se debió presentar. La causa inicial de la remoción de la juez fue el rumor que se reseñó en el artículo del periódico El Vocero. Allí se alegó que la Hon. Carballo Nogueras era objeto de una investigación federal. Rápidamente, esta nota fue desmentida por el entonces director del FBI en Puerto Rico. Pese a esto, la investigación contra la juez Carballo Nogueras continuó. Asimismo, esta continuó suspendida de su cargo hasta que se le encontró causa probable por los cargos que hoy tenemos ante nuestra consideración, cuando -irónicamente- fue restituida a su cargo en lo que culminaba este procedimiento disciplinario.

La juez Carballo Nogueras debió ser restituida a su puesto tan pronto se desmintió el rumor de la inexistente investigación federal. Sin embargo, no se restituyó y, por el contrario, la OAT se atrincheró y decidió continuar con la investigación. Esta se desvirtuó para convertirse en una expedición de pesca. Se decidió investigar lo que ya la OAT había concluido que no violaba los cánones: el viaje a Orlando, Florida, en agosto de 2011. Más aun, para

justificar la suspensión previa, la OAT la investigó y presentó querella contra esta juez pero no hizo lo mismo con los demás jueces que asistieron a la fiesta de cumpleaños de la licenciada González Cabrera.

Es bajo estas circunstancias que se decide imputar a la juez las violaciones que hoy tenemos ante nuestra consideración. Como este Tribunal ha mencionado, es necesario que vigilemos que los jueces cumplan con los Cánones de Ética Judicial. El buen funcionamiento de la Rama Judicial requiere que su personal exhiba una conducta que inspire confianza y respeto al Pueblo. Ahora bien, al igual que exigimos a los jueces que exhiban una conducta ejemplar, la OAT tiene que reciprocar ese requisito. No podemos resignarnos a pensar que "en casa del herrero hay cuchillo de palo".

Lamentablemente, esa tendencia es la que asoma de una lectura de los votos disidentes. Se hace un mal llamado a la consistencia para pretender que las situaciones diferentes se traten igual. Esa sería la más crasa de las injusticias. Pero si de consistencia se trata basta con contrastar la severidad que postuló el Juez Asociado señor Colón Pérez aquí y en su voto disidente en In re Colón Colón, 2017 TSPR 49, 197 DPR ___ (2017), con la lenidad que expresó al disentir de las sanciones impuestas en In re Vélez Colón, 2017 TSPR 133, 198 DPR ___ (2017), y en In re Candelaria Rosa, 2017 TSPR 29, 197 DPR ___ (2017). Uno se cuestiona si esos votos los escribió la misma persona

hasta que coteja qué gobernador nombró a cada uno de los jueces implicados.

Basta con leer los votos disidentes para percatarse de que lo que postulan es precisamente lo que niegan: el aislamiento total del juez. Como resultado, convalidan la fabricación de un caso disciplinario, descartan la prueba y el informe exonerador de la Comisión de Disciplina Judicial, y defienden la conducta errática de los anteriores administradores de esta rama. No hay evidencia de que la juez decidiera de manera parcializada en algún caso ante su consideración. Aun así, los votos disidentes invocan la apariencia de parcialidad pero rechazan la prueba que la desmiente. Reconocen que el criterio ético correcto es si las relaciones sociales del juez le impiden ser imparcial ante los ojos de un observador objetivo pero invocan otro criterio subjetivo para llegar al resultado que desean: lo que pueda pensar alguien solo porque vio al juez socializando con los abogados. Mencionan la diferencia entre los procesos disciplinarios y los penales como si eso justificara la fabricación de un caso y la suspensión injusta de la juez. Ante la selectividad de la OAT su respuesta conveniente es que -ahora- se investigue viciosamente a todos los jueces. En fin, al leer los votos disidentes viene a mi mente la imagen del *surfer* que se contorsiona en una tabla roja, sobre aguas turbias, en una noche oscura. Pasaría inadvertido pero el color lo delata.

La OAT tiene que ser rigurosa y exhaustiva, pero también cautelosa, con las investigaciones que lleva a cabo. Por eso, no se deben iniciar investigaciones selectivas, sin fundamentos sólidos, por rumores infundados y desmentidos. Si suspendemos a una juez por una base tan endeble nosotros mismos destruiríamos la confianza y el respeto del Pueblo hacia la Rama Judicial.

Con la suspensión sumaria de la juez Carballo Nogueras se violaron todos los principios elementales de un proceso adecuado. Se investigó a la juez de forma selectiva, por un asunto del que se aduce que ya había sido exonerada, como excusa para justificar una suspensión sumaria viciosa e indebida, que se basó en rumores desmentidos. Los procesos disciplinarios en esta rama están para mantener una judicatura honesta y digna de la confianza pública. No están para perseguir jueces honestos y laboriosos ni para justificar abusos de la Oficina de Administración de Tribunales.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Hon. Sylkia Carballo Nogueras

     Jueza Superior            AD-2015-2

Tribunal de Primera Instancia

Voto particular disidente emitido por la Jueza Presidenta Oronoz Rodríguez al cual se une la Juez Asociada señora Rodríguez Rodríguez

En San Juan, Puerto Rico, a 2 de agosto de 2017.

¿Debe una Jueza compartir socialmente con el fiscal asignado a su sala y con una abogada de defensa que postula constantemente ante ella?

No está en controversia que la Jueza Sylkia Carballo Nogueras compartió en un viaje a Orlando con el Fiscal Jan Mangual Mangual y la Lcda. Ana Luisa González Cabrera; que se quedaron en el mismo hotel pues la Jueza les brindó la información y les proveyó el contacto de la agencia que organizó su viaje; y que los abogados y la Jueza compartieron juntos en los parques de diversión y la licenciada González Cabrera consignó que acudió al viaje, en gran medida, para celebrar el cumpleaños de la Jueza Carballo Nogueras.

Tampoco está en controversia que la Jueza Carballo Nogueras acudió a la casa de la licenciada González Cabrera para celebrar el cumpleaños de esta última. Si le preguntáramos a un ciudadano desligado de estos hechos si está bien que los jueces compartan socialmente con abogados que postulan a diario en sus salas contestarían, obviamente, en la negativa.

¿Y qué si dijéramos a ese ciudadano que el Canon 34 de Ética Judicial, infra, dispone que: "[l]as juezas y los jueces no aceptarán invitaciones para compartir en actividades sociales cuando provienen de abogadas y abogados que con frecuencia comparecen ante la sala que presiden"? ¿Ese ciudadano pensaría que el texto del canon es ambiguo? ¿Pensaría que existe alguna razón para que este Tribunal no aplique el canon a la Jueza Carballo Nogueras?

Una Mayoría, inexplicablemente, decidió que la Jueza no violó los Cánones de Ética Judicial. Con ello lacera, una vez más, la confianza de la ciudadanía en esta institución, y envía un mensaje nefasto a la judicatura y al país.

En el intento de defender lo indefendible varios miembros de este Tribunal: 1) atacan el proceso pues estiman que la investigación debió cesar en el momento en que el jefe del Negociado Federal de Investigaciones (FBI) expresó públicamente que no había una investigación formal sobre esa jueza; 2) señalan incorrectamente que la Oficina de Administración de Tribunales (OAT) ya había evaluado la

conducta; 3) dicen que no se probó la parcialidad de la Jueza en su desempeño judicial, lo cual no es necesario y, más aún, estimo que es casi imposible de probar salvo que la jueza lo admita o desarrollemos la habilidad de leer mentes; 4) mencionan estadísticas que son a todas luces irrelevantes y que no apoyan sus conclusiones; 5) exponen correctamente el estado de derecho pero rehúsan aplicarlo en este caso; 6) atacan -nuevamente, cual disco rayado- a la ex Directora Administrativa de los Tribunales por hacer su trabajo e investigar alegaciones serias que fueron confirmadas con la investigación; y 7) señalan que otros jueces también acudieron a la fiesta de cumpleaños de la licenciada González Cabrera, como si eso eximiera a la Jueza Carballo Nogueras en este caso.

A poco se miren con detenimiento los hechos de este caso, y se despeje el humo de la bola que lanzó una Mayoría, se llega a la conclusión inescapable que la Jueza Carballo Nogueras, en un error de juicio severo, violentó los Cánones de Ética Judicial.

I

La Hon. Sylkia Carballo Nogueras juramentó como Jueza Municipal en enero de 1999. Posteriormente, en enero de 2007 juramentó como Jueza Superior. Desde septiembre de 2007 hasta marzo de 2015, ejerció su cargo en el Centro Judicial de Caguas y, particularmente, desde julio de 2009 hasta agosto de 2014 atendió una sala de vistas preliminares en dicho centro judicial.

El 22 de agosto de 2014, se ordenó el relevo con paga de la Jueza Carballo Nogueras de sus funciones judiciales como medida cautelar para salvaguardar la confianza de la ciudadanía en su sistema de justicia.[1] Esto, luego de que un periódico de circulación general publicara que la Jueza Carballo Nogueras era objeto de una investigación por parte del FBI por corrupción judicial. En particular, se alegó que la Jueza Carballo Nogueras era objeto de señalamientos por una serie de pagos de viajes, cenas y fiestas, entre otros. Posteriormente, el FBI desmintió que estuviera llevando a cabo una investigación formal sobre la conducta de la Jueza Carballo Nogueras.

Según la facultad que le confieren las Reglas de Disciplina Judicial, 4 LPRA Ap. XV-B, el 25 de agosto de 2014, la Directora Administrativa de los Tribunales ordenó el inicio de una investigación sobre la alegada conducta de la Jueza Carballo Nogueras.[2] Como parte de la investigación, la Oficina de Asuntos Legales (OAL) de la OAT visitó el Centro Judicial de Caguas. Allí surgió información sobre un alegado viaje al estado de la Florida que realizó la Jueza Carballo Nogueras al que también asistieron una conocida abogada y un fiscal de Caguas.[3] A raíz de la información provista, la OAL entrevistó y tomó declaraciones juradas a las personas con información

---

[1] Véase Orden Administrativa RFJ2014-287 de 22 de agosto de 2014. El 17 de marzo de 2015, se reinstaló a la Jueza Sylkia Carballo Nogueras en sus funciones judiciales.
[2] Véase *Orden de la Directora Administrativa de Tribunales* del 25 de agosto de 2014.
[3] Véase *Informe de investigación de la Oficina de Asuntos Legales*, pág. 1.

pertinente sobre el asunto, a saber: el licenciado Mangual Mangual, quien en aquél entonces ocupaba el puesto de fiscal, y la licenciada González Cabrera. Éstos relataron los hechos que reseñamos a continuación y que dieron lugar a la presentación de la querella que nos ocupa.

El licenciado Mangual Mangual fungía como representante del Ministerio Público en la sala de vistas preliminares que atendía la Jueza Carballo Nogueras.[4] Durante el mes de agosto del 2011, terminados los trabajos del día, éste permaneció en la sala hablando con la Jueza.[5] Como parte de la conversación, el licenciado Mangual Mangual manifestó que iría de vacaciones durante el mes de agosto a la ciudad de Fort Lauderdale, ubicada en el estado de Florida. A esto, la Jueza respondió que ella también disfrutaría de sus vacaciones en el mes de agosto y que iría con su esposo a la ciudad de Orlando, Florida. El letrado respondió que hacía años que no iba a Orlando y que en algún momento le gustaría ir. La Jueza le indicó que éste podía ir en carro y le informó el nombre del hotel donde ella se hospedaría y la compañía donde podía tramitar la reservación.[6] No obstante, el licenciado Mangual Mangual le expresó que le resultaba muy oneroso conducir en carro tal ruta, por lo que verificaría con su compañía de avión

---

[4] Esto, desde el año 2011 hasta marzo de 2012.
[5] Era común que en la sala de la Jueza Carballo Nogueras se dieran conversaciones entre ésta y el Lcdo. Jan Mangual Mangual sobre asuntos no judiciales luego de las vistas y antes de retirarse cada cual para sus respectivas oficinas.
[6] Véase Informe enmendado de conferencia con antelación a vista, estipulación de hecho núm. 16.

"para cambiar el viaje de Fort Lauderdale" a los fines de salir "de  Puerto Rico hacia Orlando".[7]

Así las cosas, el licenciado Mangual Mangual efectuó el cambio de ruta y, además, reservó una habitación en el mismo hotel donde se estaría hospedando la Jueza Carballo Nogueras. La licenciada González Cabrera se enteró del viaje en cuestión y decidió ir porque "[sus] sobrinas viven allá y las q[uería] visitar . . . y ya que [el licenciado Mangual Mangual y la Jueza Carballo Nogueras] [irían]".[8]

Eventualmente, el viaje se llevó a cabo. Además de la Jueza Carballo Nogueras y su esposo, asistieron el licenciado Mangual Mangual, la licenciada González Cabrera y un abogado que trabajaba en la oficina de esta última acompañado de una amiga.[9] La Jueza Carballo Nogueras compartió tanto con el licenciado Mangual Mangual como con la licenciada González Cabrera en varios parques de diversión de Orlando. En su declaración jurada, la licenciada González Cabrera expresó que a ella no le gusta "Disney", pero fue porque la Jueza Carballo Nogueras cumplía años.[10]

Además del aludido viaje, la Jueza Carballo Nogueras compartió tanto con el licenciado Mangual Mangual como con la licenciada González Cabrera en diversas actividades

---

[7] Véase Declaración jurada del Lcdo. Jan Mangual Mangual, pág. 2.

[8] Véase Declaración jurada del Lcdo. Jan Mangual Mangual, pág. 3.

[9] Del expediente se desprende que el licenciado Mangual Mangual estuvo entre tres y cuatro días en Orlando, mientras que la Lcda. Ana Luisa González Cabrera estuvo aproximadamente dos días en tal ciudad.

[10] Véase Declaración jurada de la licenciada González Cabrera, págs. 4-5. La Jueza negó este hecho e indicó que ella cumplía años en febrero, no en agosto cuando se dio el viaje.

sociales mientras se desempeñaba como Jueza Superior. En particular, la Jueza asistió junto a su esposo a una fiesta de cumpleaños que celebró la licenciada González Cabrera en su casa. También asistieron a esa fiesta otros jueces, fiscales y abogados, principalmente del área de Caguas.

No obstante lo anterior, antes y después de las reseñadas actividades sociales, la Jueza Carballo Nogueras intervino en los casos en los que el licenciado Mangual Mangual y la licenciada González Cabrera postularon. Específicamente, del expediente se desprende que desde el año 2002 hasta mayo de 2014, la Jueza atendió un total de 479 casos en los cuales la licenciada González Cabrera fungió como abogada de defensa.[11] No contamos con un informe sobre la cantidad específica de casos en los que el licenciado Mangual Mangual representó al Ministerio Público ante la Jueza ya que los nombres de los fiscales no se registran en los sistemas de manejo de casos. Sin embargo, no hay controversia en cuanto a que éste "fungía como representante del Ministerio Público en la sala de vistas preliminares que atendía la Jueza Carballo Nogueras".[12]

En atención a lo anterior, la OAT emitió un Informe de Investigación en el cual recomendó a la Comisión de Disciplina Judicial (Comisión) la presentación de una querella contra la Jueza Carballo Nogueras por violación a

---

[11] De los 479 casos en los que la licenciada González Cabrera fungió como abogada de defensa, la Jueza Carballo Nogueras determinó causa probable para acusar en 228 casos y no causa probable para acusar en 155 casos. En 96 casos recayó sentencia mediante la cual se dispuso de los casos por desestimación, archivo y otras.
[12] Véase Informe de la Comisión de Disciplina Judicial, pág. 4.

los Cánones 8, 20(i), 23 y 34 de Ética Judicial, 4 LPRA Ap. IV-B. Posteriormente, según exige nuestro esquema de disciplina judicial, una comisionada rindió un informe en el que determinó causa probable para iniciar un procedimiento disciplinario contra la Jueza.

La OAT presentó así una querella contra la Jueza Carballo Nogueras. Formuló dos cargos por violación a los Cánones 8, 20(i), 23 y 34 de Ética Judicial, supra, por lo siguiente: (1) compartir en actividades sociales con abogados que postulaban frecuentemente en su sala y, particularmente, al promover e invitar al licenciado Mangual Mangual y a la licenciada González Cabrera a que compartieran con ella durante las vacaciones en Orlando, Florida; y (2) al intervenir, en lugar de inhibirse, en aquellos casos en los que postulaban el licenciado Mangual Mangual y la licenciada González Cabrera, quienes eran sus amigos. Conforme con los cargos imputados, tales conductas minaron la confianza pública en el sistema de justicia, pudieron generar dudas sobre su imparcialidad para adjudicar los casos y constituyeron apariencia de prejuicio y parcialidad.

La Jueza Carballo Nogueras contestó la querella.[13] Argumentó que, a pesar de haber participado en actividades sociales en las que estuvieron presente el licenciado Mangual Mangual y la licenciada González Cabrera, entendió

---

[13] Cabe resaltar que la Jueza alegó que los hechos que motivaron el relevo de sus funciones judiciales resultaron ser falsos y no tienen nada que ver con la querella presentada en su contra.

que podía llevar a cabo su función adjudicativa de forma imparcial. Resaltó que el hecho de que haya atendido 479 casos en los que compareció la licenciada González Cabrera no constituye prueba suficiente de parcialidad hacia esta última, pues quien asigna los casos a las diferentes salas es la Secretaría del Tribunal. Añadió que en este caso no hubo un incidente específico que permita concluir que violó los Cánones de Ética Judicial. Detalló, además, que sus evaluaciones judiciales demuestran que su integridad e imparcialidad para adjudicar nunca han sido objeto de algún señalamiento.[14]

Transcurridos los trámites procesales de rigor, las partes estipularon hechos y evidencia documental y testifical, por lo que aceptaron someter el caso ante la consideración de la Comisión por las constancias del expediente.

La Comisión rindió un informe final y concluyó que la Jueza Carballo Nogueras no incurrió en las violaciones éticas imputadas. Ello, ya que entendió que

> [a]parte de coincidir en un solo viaje a Orlando con una abogada y un fiscal que postulaban en su sala y al cumpleaños de la misma abogada . . . no hay prueba [de] que la [J]ueza Carballo Nogueras exhibiera en público un comportamiento que trascendiera los límites de lo prudentemente permisible.[15]

---

[14] Sobre este particular, la Jueza Carballo Nogueras mencionó que a través de los años ha recibido las siguientes evaluaciones: en el año 2005, "muy bien calificada" en los renglones de integridad y reputación; en el año 2010, "muy bien calificada" en el renglón de integridad y "bien calificada" en el renglón de reputación o imagen pública; y en el año 2013, "muy bien calificada" en cuanto a integridad y reputación o imagen pública.
[15] Informe de la Comisión, pág. 10.

Según la Comisión, en el expediente no hay documentos que permitan establecer que los referidos encuentros sociales propiciaron que la Jueza actuara contrario a la ley. Asimismo, la Comisión resaltó que no se presentó prueba alguna de que su capacidad para adjudicar controversias de forma imparcial se viera comprometida antes o después de las actividades reseñadas. Finalmente, y en referencia al Canon 34 de Ética Judicial, supra, determinó que no se demostró la existencia de un patrón de conducta incompatible con el ejercicio de su cargo. Ante ello, recomendó la desestimación y el archivo de la querella.

II

El esquema de disciplina judicial se deriva de la Constitución de Puerto Rico que, en lo pertinente, dispone que los jueces y juezas podrán ser destituidos por este Tribunal "por las causas y mediante el procedimiento que se disponga por ley". Const. PR, Art. V, Sec. 11, LPRA, Tomo 1. Con tal de llevar a cabo tal función, aprobamos el Código de Ética Judicial que recoge aquellas normas mínimas de conducta "que deben cumplir celosamente quienes tienen la encomienda de impartir justicia". Preámbulo del Código de Ética Judicial, 4 LPRA Ap. IV-B. Véase además, A. S. Andruet *et al.*, Ética judicial: visión latinoamericana, México, Suprema Corte de Justicia de la Nación: Comisión Iberoamericana e Ética Judicial, 2012, págs. 202-262.

Ciertamente, estas normas imponen limitaciones en la

vida de quienes aceptan la encomienda de fungir como jueces y juezas en nuestro País. Ello, pues al asumir el cargo, los miembros de la Judicatura "aceptan también ciertas restricciones a su conducta, tanto en el ejercicio de sus funciones propiamente judiciales, como en sus demás actividades, ya sean personales o profesionales". Íd. Se trata de sacrificios que, a fin de cuentas, enaltecen la integridad de su ministerio y estimulan la confianza del público en su Rama Judicial. Íd.

En el caso de autos, se imputa a la Jueza Carballo Nogueras haber violado los Cánones 8, 20(i), 23 y 34 de Ética Judicial, supra. Pasemos, pues, a evaluar las coordenadas jurídicas pertinentes a tales disposiciones particulares.

El Canon 8 de Ética Judicial, 4 LPRA Ap. IV-B, C. 8, requiere que los jueces y juezas ejerzan sus funciones judiciales de forma independiente, partiendo de una comprensión cuidadosa y consciente de la ley y libre de cualquier influencia ajena. Además, y de particular pertinencia para este caso, este Canon dispone que la conducta de los miembros de la Judicatura ha de excluir la posible apariencia de que "son susceptibles de actuar por influencias de personas, grupos, partidos políticos o instituciones religiosas, por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias". Íd.

Así, aparte de exigir que los jueces y juezas tomen sus

sus determinaciones judiciales sin influencias externas, el principio recogido en el Canon 8, supra, "también les exige que no realicen actividades o incurran en conducta que pueda crear *la apariencia* de que su imparcialidad está comprometida. De ahí surgen variadas limitaciones que los cánones imponen a los [j]ueces tanto en su vida profesional como en su vida privada". A. S. Andruet *et al.*, op. cit., pág. 233 (énfasis suplido). Como corolario de lo anterior, el juez o jueza tiene que prever y analizar las posibles consecuencias de sus actos en términos de las impresiones que podrían recibir terceras personas. In re Ortíz Rivera, 163 DPR 530 (2004), citando a R.J. Torres Torres, Cánones de Ética Judicial de Puerto Rico, Año 9 (Núms. 1-4) Forum 7, 16 (1993). Además, debe evitar situaciones que puedan afectar negativamente su imagen y poner en duda su recto criterio judicial. Íd., citando a L.M. Negrón, Ética y disciplina judicial en Puerto Rico, San Juan, 1987, pág. 131.

En aras de preservar la imparcialidad de los procesos adjudicativos, el Canon 20 de Ética Judicial, 4 LPRA Ap. IV-B, C. 20, enumera ciertas instancias en las que un juez o jueza debe inhibirse de la consideración de un caso. En lo pertinente, el inciso (i) de dicho Canon dispone que es necesaria la inhibición de un juez o jueza por cualquier causa "que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia". Íd.

Sobre este particular, es importante destacar que "para que proceda la inhibición no es imprescindible probar la existencia de prejuicio o parcialidad de hecho; *basta con la apariencia de parcialidad o prejuicio*". Ex parte Andino Torres, 151 DPR 794 (2000) (énfasis suplido). En este tipo de casos se requiere evaluar si la inhibición procede desde el punto de vista de un observador o una observadora razonable, bien informado o informada con todos los datos relevantes que estén a la luz pública y los que no lo están. Íd.

Se incurre en violación del citado Canon 20, supra, cuando la conducta imputada arroja dudas sobre la imparcialidad del juez o jueza y mina la confianza pública en el sistema de justicia. In re Castro Colón, 155 DPR 110 (2001). Conforme con lo anterior, los miembros de la Judicatura no deben aceptar encomiendas o labores que pongan en riesgo "la imagen de imparcialidad y sobriedad que enaltece a la [J]udicatura ni que arrojen dudas acerca de su capacidad para actuar con ecuanimidad". In re Campoamor Redín, 150 DPR 138, 152 (2000).

En ocasiones anteriores, hemos evaluado la conducta de jueces y juezas que, por razón de la relación entre éstos y alguna de las partes, han empañado la imagen de imparcialidad de su cargo al intervenir en ciertos casos. Por ejemplo, en In re Campoamor Redín, supra, evaluamos la conducta de un juez que anunció como testigo a un licenciado en un caso personal y luego intervino como juez

en unos casos en los que dicho abogado representaba a los acusados. Allí determinamos que el juez querellado, *aunque de facto no actuó de forma parcializada*, violentó los Cánones de Ética Judicial, supra, porque se colocó en una posición en que su imparcialidad pudo ser razonablemente cuestionada. Íd. Expresamos que el querellado "debió velar por que la balanza en que se pesan los derechos de los ciudadanos est[uviese] libre de sospechas". Íd., pág. 153.[16] Asimismo, en In re Lugo Rodríguez, 149 DPR 551 (1999), hallamos que un juez violentó los preceptos éticos aplicables y lo censuramos por, entre otros asuntos, rebajar la fianza de un acusado que era su vecino y conocido de años. Entendimos que el querellado, "actuando como juez, desplegó cuando menos un juicio poco prudente al intervenir" en dicho asunto. Íd. [17]

De otra parte, el Canon 23 de Ética Judicial, 4 LPRA Ap. IV-B, C. 23, referente a las actividades extrajudiciales, exige que el comportamiento público de los jueces y juezas no ponga en duda su capacidad para ejercer

---

[16] Por tal conducta, censuramos enérgicamente al querellado y le apercibimos que no toleraríamos futuras actuaciones que frustren la fe y minen la confianza del Pueblo en el sistema de justicia.

[17] Véanse, además, In re González Acevedo, 165 DPR 81 (2005)(donde suspendimos por el término que restaba de su nombramiento a una jueza que atendió varios recursos de revisión de boletos de tránsito presentados por otra jueza que, además, era su compañera de oficina); In re Suárez Marchán, 159 DPR 724 (2003) (donde censuramos enérgicamente y apercibimos a un juez que intervino en varios trámites judiciales en los que una de las partes era su amiga y quien eventualmente se convirtió en su pareja); In re Castro Colón, 155 DPR 110 (2001) (donde censuramos severamente a una jueza que emitió dos órdenes *ex parte* a solicitud y a favor de un alcalde municipal sin tener autoridad para hacerlo lo que, según determinamos, podría generar la apariencia de que tales actuaciones iban "dirigidas a reconocerle un privilegio especial al Alcalde o [estaban] motivadas por el favoritismo político").

su función adjudicativa de manera imparcial. Véase In re Acevedo Hernández, 2015 TSPR 167, 194 DPR ___ (2015); In re Quiñones Artau, 193 DPR 356 (2015). También les exige que sus actuaciones no deshonren el cargo judicial que ocupan ni interfieran con el desempeño de sus funciones. Íd.

Este Canon va dirigido a establecer una norma de conducta general que responde a la alta estima y confianza pública investida en los jueces y juezas. In re Claverol Siaca, 175 DPR 177, 190 (2009). Su principal fin es pautar una regla precisa para regir el comportamiento público de los miembros de la Judicatura en el contexto de sus actividades fuera del estrado. In re Aprobación Cánones Ética Judicial 2005, 164 DPR 403, 445 (2005).

Finalmente, el Canon 34 de Ética Judicial, 4 LPRA Ap. IV-B, C. 34, dispone lo siguiente:

> **[l]as juezas y los jueces no aceptarán invitaciones para compartir en actividades sociales cuando provienen de abogadas y abogados que con frecuencia comparecen ante la sala que presiden.** Tampoco aceptarán invitaciones de personas o de abogadas y abogados cuyos intereses hayan estado, estén o sea probable que vayan a estar ante la consideración de las juezas o de los jueces. Íd. (énfasis suplido)

La prohibición codificada en este Canon pretende proteger la imparcialidad en nuestro sistema judicial. Ello, al proscribir actuaciones de miembros de la judicatura que puedan dar la impresión de que las relaciones sociales de éstos –sean de amistad, familia o

negocio- ejercen influencias indebidas en sus determinaciones judiciales. In re Aprobación Cánones Ética Judicial 2005, supra, pág. 466. Véanse además, In re Ruiz Rivera, 168 DPR 246 (2006); In re Ortíz Rivera, supra. Esto debe ser así porque

> el juez, como tal, es el árbitro designado por la sociedad, a través del Estado, para juzgar la conducta humana. Y para poder merecer el respeto de la sociedad y el acatamiento de sus decisiones, ha de ser, y ser visto, como un ser humano sin tacha. Ello exige, no solamente ser bueno, sino también parecerlo. In re Suárez Marchán, supra, citando a Carlos J. Irizarry Yunqué, La ética judicial, Forum, 1993, pág. 4.

A la luz de los preceptos éticos reseñados, procedo a evaluar la conducta imputada a la Jueza Carballo Nogueras.

III

El Voto particular de conformidad se extiende y expande en una discusión sobre las estadísticas que presentó la Jueza Carballo Nogueras sobre los casos en los que la licenciada González Cabrera postuló ante su sala. [18] Las usa para hallar algún resquicio que la exonere de violar la ética judicial. Esa cifra estadística es impertinente. Si fuéramos a utilizarla, como mínimo, habría que compararla con las de otros jueces y juezas que atienden una sala de vistas preliminares para luego, hacer un análisis del por ciento de vistas en las que, de ordinario, un juez o jueza determina causa. Asimismo,

---

[18] En particular, entre 2002 y 2014 la Jueza atendió un total de 479 casos en los cuales la licenciada González Cabrera fungió como abogada de defensa. De estos, determinó causa probable para acusar en 228 casos y no causa probable para acusar en 155 casos.

habría que comparar las cifras con las correspondientes a distintos letrados en vista preliminar y ver si los por cientos de la licenciada González Cabrera son típicos en ese tipo de práctica.

La mención aislada de cifras y por cientos, inconexa de referentes adecuados o lógicos, para lograr una exoneración desesperada, no comprueba, según se pretende establecer, que la Jueza actuó de manera imparcial en los casos de los dos letrados con los que compartía socialmente. No basta con resaltar que la Jueza halló causa probable para acusar en una cantidad particular de casos. Establecer imparcialidad requiere mucho más que unas estadísticas huérfanas de contexto. Probar parcialidad requeriría que: (a) la Jueza lo admita; (b) podamos leer su mente; o (c) se determine que, con hechos similares, pero con otros abogados ante sí, hubiese fallado de forma distinta.

Asimismo, el Voto particular de conformidad divaga en una discusión que parece obligar a los jueces y las juezas a que vivan en el aislamiento. In re Ortíz Rivera, supra. Como todos los seres humanos, los miembros de la Judicatura tienen relaciones sociales, familias y amistades. Ahora bien, el cargo que aceptan ocupar conlleva grandes responsabilidades y sacrificios. Después de todo, sus actuaciones impactan directamente la confianza del público en sus instituciones judiciales, elemento esencial de la legitimidad de cualquier sistema de justicia. Es por eso

que sus interacciones sociales no pueden interferir con la imagen de imparcialidad que debe caracterizar su cargo. Ante situaciones como la de autos, la inhibición constituye un mecanismo valioso para la protección de la legitimidad y la confianza pública de la Rama Judicial. Los cánones no le exigen a los jueces que no socialicen, meramente que no lo hagan con abogados que postulan frecuentemente en sus salas.

El Voto particular de conformidad confunde además la valoración ética-judicial de la conducta de la Jueza Carballo Nogueras con el trámite de la OAT en cuanto la querella. No existe controversia en cuanto a que se publicó una noticia en la cual se expresó que la Jueza Carballo Nogueras era objeto de señalamientos por alegados pagos de viajes, cenas y fiestas, entre otros. La expresión del FBI sobre la falta de investigación formal de la Jueza por presunta corrupción judicial, no obligó ni podía obligar a la OAT en cuanto al devenir y desenlace de su investigación. Son dos procesos separados con dos estándares de prueba distintos –uno ético-judicial y otro penal.[19] La gravedad de los señalamientos permitía que la entonces Jueza Presidenta tomara las medidas

---

[19] Tal y como ha establecido reiteradamente este Alto Foro, el procedimiento criminal y el procedimiento disciplinario administrativo son independientes uno del otro. Trib. Exam. Méd. v. Cañas Rivera, 154 DPR 29 (2001); Reyes Salcedo v. Policía de P.R., 143 DPR 85, 96-97 (1997); Mundo v. Tribunal Superior, 101 DPR 302-304-305 (1973). Ello, no sólo porque estos procedimientos aparejan diferentes grados de prueba, sino, además, porque son procedimientos de naturaleza distinta, que persiguen objetivos concretos diferentes. Trib. Exam. Méd. v. Cañas Rivera, supra. El procedimiento disciplinario ante la Comisión no va dirigido a procesar al querellado por la comisión de delitos, sino a pasar juicio sobre conducta que sostenemos constituye violaciones a los Cánones de Ética Judicial.

cautelares que consideró necesarias. La suspensión con paga[20] y el procedimiento investigativo era permisible y adecuado.[21]

Toda esta discusión pierde de perspectiva aquello que dispone total y cabalmente de este caso: la Jueza Carballo Nogueras compartió socialmente una y otra vez con el licenciado Mangual Mangual y la licenciada González Cabrera. Ambos postularon una y otra vez ante ella en la sala que presidía. La Jueza Carballo Nogueras adjudicó una y otra vez controversias que implicaban a las partes a quienes el licenciado Mangual Mangual y la licenciada González Cabrera representaban. ¿Cuál es la ambigüedad o la confusión de la Mayoría? El expediente establece que, a raíz de una conversación que hubo en las propias instalaciones del Tribunal, el licenciado Mangual Mangual cambió el itinerario de un viaje que tenía planificado hacia una ciudad distinta a los fines de coincidir con la Jueza en la misma ciudad y en el hotel en que ésta se estaría hospedando. Igualmente, la licenciada González Cabrera, al enterarse de que la Jueza y el licenciado Mangual Mangual irían, planificó acudir y acudió a la ciudad de Orlando, Florida. Allí la Jueza Carballo

---

[20] Art. 6.007 de la Ley de la Judicatura, 4 LPRA sec. 25o.

[21] Por lo tanto, no procede considerar como una limitación al inicio de la investigación en este caso, el hecho de que alegadamente la Jueza Carballo Nogueras se reunió con la entonces Directora de la OAT y esta determinó que no existía prueba que diera lugar a una acción disciplinaria. No tenemos constancia de lo que se conocía en ese momento ni lo que se dialogó en dicha reunión. Además, de más está señalar que sí existe prueba de una violación ética y de que la Jueza tuvo la oportunidad de expresarse sobre los cargos en su contra y presentar prueba a su favor.

Nogueras, junto a su esposo, compartió con los letrados en varios parques de diversión. Además, la Jueza acudió a una fiesta de cumpleaños que llevó a cabo la licenciada González Cabrera en su casa. A pesar de ello, la Jueza Carballo Nogueras intervino, antes y después de tales actividades, en aquellos casos en que los licenciados Mangual Mangual y González Cabrera comparecieron. Reitero: ¿Cuál es la ambigüedad que impide alcancemos la conclusión obligatoria de que la Jueza violó la ética judicial?

La Jueza Carballo Nogueras no coincidió de forma incidental con los letrados en el referido viaje. Ello es contrario a las determinaciones de hecho de la Comisión y al expediente del caso.[22] Según reseñé, la Comisión expuso que el licenciado Mangual Mangual cambió la ruta de su viaje a los fines de ir a la ciudad de Orlando luego de que la Jueza le indicó que podía ir en carro hacia allá. Las partes estipularon, además, que la Jueza Carballo Nogueras compartió con el licenciado Mangual Mangual el nombre del hotel en el cual ella se hospedaría y la compañía con la cual podía tramitar la reservación.[23] De igual forma, la Comisión reseñó como determinación de hecho que la licenciada González Cabrera acudió a Orlando tras enterarse de que la Jueza y el licenciado irían y, una vez allí, el grupo compartió en varios parques de diversión. No hay espacio para interpretaciones alternas.

---

[22] Nótese que los hechos reseñados por la Comisión en su Informe fueron estipulados por las partes.
[23] Véase *Informe enmendado de conferencia con antelación a vista*, estipulación de hecho núm. 16.

La Jueza Carballo Nogueras compartió en diversas actividades sociales con dos abogados que postulaban frecuentemente en la sala que presidía. Aun cuando la Comisión estimó que la relación entre la Jueza y los letrados no afectó su capacidad para adjudicar con independencia, su conducta pudo generar la apariencia proscrita por el Canon 8 de Ética Judicial, supra. Conforme con este Canon, los jueces y juezas no sólo deben ser imparciales a la hora de adjudicar, sino que también deben aparentar serlo. Es por ello que la conducta de la Jueza Carballo Nogueras está en tensión abierta con las exigencias expresas del Canon 8, supra.

De igual forma, la Jueza Carballo Nogueras infringió el Canon 23 de Ética Judicial, supra, que requiere que los miembros de la Judicatura se conduzcan en su vida privada de forma que no creen dudas sobre su capacidad para adjudicar imparcialmente. Su confraternización social en un viaje, en una fiesta de cumpleaños, y en otras actividades con abogados que postulaban ordinariamente en su sala, contravino la obligación que exige el canon y puso en riesgo la imagen de independencia en su función judicial. Neto: ningún ciudadano vería con buenos ojos que una Jueza esté de fiesta con un abogado que promueve sus intereses y los de su cliente ante su sala.

Este escenario arrojó dudas sobre su imparcialidad. La Jueza Carballo Nogueras debió inhibirse en aquellos casos en los que el licenciado Mangual Mangual y la licenciada

González Cardona postulaban, según exige el Canon 20(i) de Ética Judicial, supra, aunque entendiera que podía adjudicarlos sin prejuicio ni parcialidad.

Así, ante el Canon 20(i) de Ética Judicial, supra, la pregunta que debemos formularnos no gira en torno a si la Jueza adjudicó o pudo adjudicar de forma imparcial los casos en cuestión. Más bien, exige determinar si un observador razonable consideraría que las interacciones sociales en controversia pudieran afectar de algún modo su imparcialidad. Por supuesto que hay que responder en la afirmativa. La Jueza Carballo Nogueras fue imprudente al intervenir en aquellos casos en los que postulaban abogados con quienes compartió socialmente una y otra vez. Véase In re Campoamor Redín, supra.

La conducta de la Jueza Carballo Nogueras violentó también el Canon 34 de Ética Judicial, supra, que expresamente prohíbe a los jueces y juezas aceptar invitaciones para compartir en actividades sociales con abogados y abogadas que frecuentemente postulan ante sí. Fue eso precisamente lo que hizo la Jueza al asistir a la fiesta de cumpleaños de la licenciada González Cabrera quien, según se desprende del expediente del caso, postuló en más de 400 casos en su sala. En su momento, de este Tribunal entenderlo necesario, se podría suprimir o modificar este canon. Sin embargo, al presente no hay razón para ignorar la letra clara del mismo meramente porque no queramos aplicarlo a unos hechos particulares.

Por otro lado, es inadecuado, además de problemático, que varios miembros de este Foro llamen la atención a que, de todos los jueces y juezas que asistieron a la fiesta, solo se cuestionaran los actos de la Jueza Carballo Nogueras. Este detalle es inconsecuente y no cambia el hecho de que la Jueza contravino varias normas de ética judicial. La conducta inapropiada potencial de otros jueces o juezas que también participaron del evento no exonera a la Jueza Carballo Nogueras. En todo caso procedía ampliar la investigación en cuanto a los otros jueces y juezas que asistieron, alegadamente, a la actividad. En particular, habría que examinar si la licenciada González Cabrera también postulaba frecuentemente ante estos.[24]

En fin, es más que evidente que la Jueza Carballo Nogueras transgredió los postulados éticos de los Cánones 8, 20(i), 23 y 34 de Ética Judicial, supra. Sus actuaciones demostraron, como mínimo, una falta de prudencia al no abstenerse de adjudicar aquellos casos en los que postulaban abogados con los que compartía en actividades sociales de índole diversa. Requerir evidencia de parcialidad para hallar violaciones éticas en casos como el de autos, según hizo la Comisión, frustraría el fin de los preceptos éticos discutidos, a saber: salvaguardar *la*

---

[24] Igual de inconsecuente resultan las evaluaciones judiciales a las que se hizo referencia en el Voto particular de conformidad. No dudo que esta sea una buena jueza. Sin embargo, lo que está en controversia no es el desempeño de la Jueza, sino su falta de circunspección al compartir socialmente con abogados y abogadas que postulaban frecuentemente en su sala y si esos hechos conllevaron una violación ética. Es evidente que sí.

*imagen* de imparcialidad y la confianza pública en la Judicatura.

Resta, pues, determinar qué sanción disciplinaria procedía en este caso. Para ello, resulta fundamental tener presente las implicaciones y consecuencias de las violaciones éticas en las que incurrió la Jueza Carballo Nogueras. La conducta ante nuestra consideración es sumamente seria. Mancilla el prestigio de la Rama Judicial y perjudica la imagen de la Judicatura. Según hemos enfatizado, la Jueza Carballo Nogueras obvió los principios y las disposiciones expresas de nuestros Cánones de Ética Judicial, supra, al compartir en actividades sociales con abogados que postulaban frecuentemente ante su sala. Intervino, además, en más de 400 casos en los que su imparcialidad pudo ser razonablemente cuestionada. Esta conducta es inaceptable.

En consideración a lo anterior, hubiese ordenado la suspensión de empleo y sueldo de la Jueza Carballo Nogueras.

IV

Al ordenar el archivo de la querella en contra de la Jueza Carballo Nogueras, una Mayoría olvida que

> La fe de la ciudadanía en el sistema de justicia que impera en nuestro País resulta ser imprescindible para su bienestar general. Esa fe se preserva únicamente en la medida en que los ciudadanos confíen en la integridad, honestidad e imparcialidad de quienes tienen la noble encomienda de impartir justicia. La imparcialidad y objetividad con que actúen los funcionarios

públicos encargados de esta delicada función, en los casos ante su consideración, son ingredientes indispensables de esa fe. Estas características no solamente tienen que ser reales, sino aparentes. Ciertamente, *no* basta con que el juez sea imparcial y objetivo; *es preciso que lo parezca*. Lind v. Cruz, supra, pág. 488. (Énfasis en el original)

La Mayoría incumplió con su deber de "velar porque la balanza en que se pesan los derechos de los ciudadanos est[é] libre de sospechas". [25] Por esto, disiento.

Maite D. Oronoz Rodríguez
Jueza Presidenta

---

[25] In re Campoamor Redín, supra, pág. 153, citando a Valentín v. Torres, 80 DPR 463, 482 (1958)

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Sylkia Carballo Nogueras            AD-2015-002

VOTO PARTICULAR DISIDENTE emitido por el Juez Asociado señor Colón Pérez.

En San Juan, Puerto Rico, a 2 de agosto de 2017.

Nuevamente, a través de este breve Voto Particular Disidente, nos vemos en la obligación de disentir enérgicamente del curso de acción seguido por una mayoría de este Tribunal al momento de imponer una sanción disciplinaria en contra de un compañero juez o jueza por violaciones a los Cánones de Ética Judicial, 4 L.P.R.A. Ap. IV-B. Hoy, la falta de uniformidad que, lamentablemente ha permeado por años en este Tribunal al momento de imponer sanciones disciplinarias, -- y que ya parece haberse convertido en una práctica por parte de este Alto Foro, según del compañero o compañera de la profesión del que se trate --, se manifiesta una vez más. Nos explicamos.

I.

En el presente caso **-- a grandes rasgos y en hechos que quedaron probados ante la Comisión de Disciplina Judicial y que acomodaticiamente se obvia mencionar en el Voto Particular de Conformidad,** -- estamos ante una compañera jueza que, en esencia, en reiteradas ocasiones, faltó a su deber ético, y en consecuencia infringió los Cánones 8, 20(i), 23 y 34 de Ética Judicial, *supra.* Ello, toda vez que atendió más de **cuatrocientos (400) casos** en los cuales los representantes legales de las partes (el fiscal o la abogada) eran personas que frecuentemente postulaban en su sala y con las cuales ésta continuamente compartía en actividades sociales (fiestas y viajes).[26] Sin duda alguna, ante ese escenario, el sentido común y la prudencia -- elementos esenciales del temperamento judicial -- invitaban a que la compañera jueza se inhibiera de atender los referidos casos que tenía ante su consideración. Sin embargo, no lo hizo y, con su proceder, puso en entredicho la imagen de imparcialidad que debe permear en todo proceso judicial que se conduce en los tribunales de nuestro País.

Los tiempos que vivimos nos exigen evaluar con rigurosidad la conducta de todos y cada uno de los miembros

---

[26] En total la Jueza Carballo Nogueras atendió 479 casos en los que una de las abogadas con las que frecuentemente compartía fungió como abogada de defensa, en 228 de estos casos determinó causa probable para acusar y en 155 no causa probable. En 96 casos se dispuso de los casos por desestimación, archivo y otras.

de la Judicatura. No se trata aquí de un incidente aislado, sino que fueron varios los casos en que la jueza Carballo Nogueras debió inhibirse y optó por no hacerlo.

Es menester señalar que, con nuestras expresiones no desalentamos de modo alguno que nuestros jueces y juezas se relacionen con los demás profesionales del Derecho. Todo lo contrario; dichas relaciones resultan intrínsecas a la naturaleza humana y promueven la confianza en nuestro sistema de justicia. No obstante, cualquier tipo de relación que entable un juez o jueza en situaciones como la que nos ocupa, debe llevarse a cabo dentro de un marco severo de cautela y prudencia. Después de todo, somos nosotros, los jueces y juezas, quienes estamos llamados a servir como figuras imparciales en las controversias que debemos adjudicar. Cuando, en función de nuestra responsabilidad delegada entendemos que existe o pudiera existir algún factor que afecte o pudiera llegar a afectar las labores que estamos a bien realizar, todo juez o jueza tiene la obligación inescapable de rehusarse a intervenir en tales situaciones.

En vista de ello, y toda vez que en el presente caso no se siguieron los lineamientos antes expuestos, estimo que la gravedad de la conducta de la compañera jueza Carballo Nogueras justificaba -- tal y como se ha hecho en el pasado con otros jueces y juezas -- su suspensión inmediata de empleo y sueldo como Jueza del

Tribunal de Primera Instancia. Tal era el proceder más correcto. Por no ser ese el curso de acción seguido por una mayoría de este Tribunal, es que emitimos este breve Voto Particular Disidente.

## II.

Lo anterior, no sin antes reiterar la enorme preocupación, manifestada ya en ocasiones previas, en torno a la falta de uniformidad y proporcionalidad que ha permeado por años en este Alto Foro al momento de imponer sanciones disciplinarias a jueces y juezas, así como a abogadas y abogados, y que, se ha sostenido, -- de una forma muy particular --, en los últimos pronunciamientos de este Tribunal en lo que al tema de la ética judicial se refiere.

Para una muestra de ello no hay que ir muy lejos, basta con analizar y comparar las últimas cinco (5) decisiones de este Tribunal en procedimientos disciplinarios contra jueces o juezas, a saber: *In re Vissepó Vazquez*, 2016 TSPR 211; *In re Candelaria Rosa*, 2017 TSPR 29; *In re Colón Colón,* 2017 TSPR 49, *In re Velez Colón, 2017 TSPR 133* (este último en calidad de Directora Administrativa de los Tribunales) y el caso que nos ocupa. En cada uno de estos procesos disciplinarios, la falta de uniformidad y proporcionalidad antes mencionada resulta evidente. **Las razones para ello, así como los motivos que se tuvieron para imponer las correspondientes sanciones en cada uno de esos casos, sólo una mayoría de este Tribunal las**

**conoce.** Lo anterior es altamente preocupante, pues la falta de transparencia y uniformidad al momento de ejercer nuestro deber inherente de reglamentar la profesión de la abogacía se traduce, precisamente, en un atentado contra la credibilidad de esta Institución.

Así las cosas, tal como lo hemos hecho en el pasado, insistimos en que es momento de estudiar y repensar el ordenamiento deontológico que rige la conducta de los abogados y abogadas, así como de los jueces y juezas, en aras de cumplir -- **de manera uniforme, y sin motivos y apasionamiento alguno** -- con la facultad constitucional e inherente que tiene este Tribunal de reglamentar la profesión. Estamos seguros que los jueces y juezas que componen la Rama Judicial de Puerto Rico, los abogados y abogadas que en ella practican, así como la comunidad en general, lo agradecerán.

## III.

Por último, es menester señalar que a falta de argumentos sólidos en derecho que legitimen su errático, político y motivado proceder en el presente caso, el Juez Asociado señor Martínez Torres busca crear sombras sobre lo dispuesto por este Juez en los procesos disciplinarios que ha tenido ante su consideración. Tal y como nos tiene acostumbrados en este tipo de caso, falla nuevamente el Juez Asociado señor Martínez Torres. Y es que con tan solo una cuidadosa lectura de los votos que quien suscribe ha emitido en los que casos a los que

éste hace referencia, la comunidad jurídica en general podrá percatarse de que -- independientemente del juez o jueza del que se trate -- este juez, en la mayoría de las instancias a las que el Juez Asociado señor Martínez Torres hace referencia, ha acogido en toda su extensión las recomendaciones que nos ha hecho la Comisión de Disciplina Judicial, ente al cual este Tribunal le ha delegado la función de atender -- en primera instancia -- los referidos procesos disciplinarios.

Lamentablemente, el compañero Juez Asociado señor Martínez Torres no puede decir lo mismo. En *In re Candelaria Rosa*, 2017 TSPR 29, la Comisión de Disciplina Judicial recomendó el archivo del caso y el Juez Asociado señor Martínez Torres optó por suspender al Juez Candelaria Rosa por tres (3) meses; en *In re Colón Colón,* 2017 TSPR 49, la Comisión de Disciplina Judicial recomendó la destitución del Juez Colón Colón y el Juez Asociado señor Martínez Torres optó por suspenderlo tan solo por tres (3) meses; y, finalmente en *In re Vélez Colón,* 2017 TSPR 133, la Oficina de la Procuradora General recomendó el archivo del caso y el Juez Asociado señor Martínez Torres optó por censurar a la Juez Vélez Colón.

Lo anterior no podía ser distinto. **Lo dispuesto por el Juez Asociado señor Martínez Torres en los mencionados casos sólo reflejan el color azul del cristal con que -- a**

**lo largo de su estadía en este Tribunal -- éste se ha mirado y se mira.**

Ángel Colón Pérez
Juez Asociado