EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| In re:<br><br>Nylda Castro Colón | 2001 TSPR 127<br><br>154 DPR |

Número del Caso: AD-1999-02

Fecha: 11/septiembre/2001

Oficina de Administración de los Tribunales:

Lcdo. Reinaldo González Colón
Oficina de Asuntos Legales

Abogado de la Parte Querellada:

Lcdo. Peter Ortiz

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Nylda Castro Colón                    AD-1999-02

PER CURIAM

San Juan, Puerto Rico, a 11 de septiembre de 2001.

No existe controversia sustancial sobre los hechos medulares del caso de autos. Según las determinaciones de la Comisión de Disciplina y de Separación del Servicio por Razón de Salud de Jueces (la Comisión), con arreglo a la prueba desfilada en una vista oral y a las estipulaciones de las partes, los hechos pertinentes son los que se relatan a continuación.

La querellada Nylda Castro Colón se ha desempeñado como Jueza Municipal de Río Grande desde 1996.

Para junio de 1998, César Méndez Otero, quien era Alcalde del Municipio de Río Grande, estaba separado de su cónyuge, Marisela García Rodríguez.

Los esposos Méndez-García se encontraban en trámites de divorcio y tenían un procedimiento pendiente ante el Tribunal de Primera Instancia, Sala Superior de Carolina.

Así las cosas, el Alcalde Méndez Otero le solicitó a la querellada que interviniese con su esposa a fin de reglamentar las relaciones entre ellos. En particular, interesaba que se resolviese lo relativo a la pensión alimentaria de su hijo y lo relativo a las relaciones paterno-filiales.

Respondiendo a la referida solicitud del Alcalde, el 2 de junio de 1998 la Jueza Castro Colón llamó por teléfono a la señora García Rodríguez. Cuando al fin pudo hablar con ella, la Jueza Castro Colón le informó a la señora García Rodríguez que quería dialogar con ella sobre la situación existente con respecto a su esposo. Le solicitó que pasara por su oficina para ello.

El 4 de junio de 1998 la señora García Rodríguez acudió a la oficina de la querellada, acompañada por su padre Marcelino García. Allí sometió una moción escrita mediante la cual le informó a la Jueza Castro Colón que el asunto de sus relaciones con el Alcalde Méndez Otero estaba pendiente ante el Tribunal Superior de Carolina. También le solicitó a la Jueza que terminara su intervención en el caso entre ella y su esposo. Dicha moción fue declarada "Con lugar" por la Jueza Castro Colón.

Lo anterior no obstante, el 21 de julio de 1998 la querellada volvió a intervenir con el asunto en cuestión. En esa ocasión, la Jueza Castro Colón emitió *ex parte* una orden dirigida a la Policía de Puerto Rico para que se acompañara al Alcalde Méndez Otero hasta la residencia de la señora García Rodríguez para que aquel recogiese allí "unos documentos y ropa de su hijo menor". En la orden se apercibía a la señora García Rodríguez a no intervenir en forma alguna con el cumplimiento de dicha orden.

Para tratar de llevar a cabo lo dispuesto en la orden referida, varios policías estatales y municipales fueron a la residencia de la señora García. Como ésta no estaba allí en esa ocasión, no fue notificada de la orden en cuestión. En consecuencia, no se entregó al Alcalde Méndez Otero documento alguno ni ropa del menor. Por ello, el 29 de julio de 1998 la Jueza Castro Colón expidió otra resolución y orden *ex parte* mediante la cual declaró a la

señora García Rodríguez incurso en desacato civil y le impuso una multa de cien ($100) dólares.

Las dos órdenes de la Jueza Castro Colón del 21 y del 29 de julio de 1998 fueron dictadas por ésta sin que antes se hubiese notificado o escuchado a la señora García Rodríguez de modo alguno.

El 7 de agosto de 1998, el Tribunal de Primera Instancia, Sala Superior de Carolina, dejó sin efecto la orden de la Jueza Castro Colón del 29 de julio de 1998. Expresamente señaló ese foro que el Tribunal Municipal de Río Grande no tenía jurisdicción en este caso.

Por razón de todo lo anterior, el 4 de diciembre de 1998 la señora García Rodríguez presentó ante la Oficina de Administración de Tribunales (OAT) una queja jurada contra la Jueza Castro Colón, mediante la cual le imputó haber intervenido indebidamente en los procedimientos entre ella y su esposo César Méndez Otero, y haber demostrado favoritismo y parcialidad a favor de éste por ser Alcalde de Río Grande. Luego de la investigación correspondiente, la OAT sometió el asunto ante la Comisión, que a su vez designó a la Lcda. Enid Martínez Moya para la determinación o no determinación de causa probable.

El 14 de junio de 1999 la licenciada Martínez Moya determinó que existía causa probable de que la Jueza Castro Colón había violado los Cánones de Ética Judicial según las imputaciones referidas, por lo que la Comisión ordenó a la OAT a presentar la querella correspondiente.

Presentada la querella referida, y luego de los trámites y procedimientos de rigor, la Comisión determinó que la Jueza había incurrido en varias violaciones a los Cánones de Ética Judicial, por razón de la conducta imputada. Específicamente, la Comisión determinó que la Jueza querellada violó: (1) el Canon I[1] en la medida en que su conducta "no estimuló el respeto

---

[1] **Canon I. Misión de los tribunales; normas éticas de conducta.**

La fe de un pueblo en la justicia, como valor esencial de la democracia, debe ser mantenida por los tribunales a los más altos niveles de la responsabilidad pública.

En el ejercicio de su delicada función, aquellas personas llamadas a impartir justicia, conscientes de la posición que ocupan en la sociedad y de la trascendencia de su misión, deben velar por que sus actuaciones respondan a normas de conducta que honren la integridad e independencia de su ministerio y estimulen el respeto y la confianza en la Judicatura. 4 L.P.R.A. Ap. IV-A C. I.

y la confianza en la judicatura"; (2) el Canon XI[2], al desplegar conducta que

aparenta responder a influencias político partidistas; (3) el Canon XII[3],

---

**[2] Canon XI. Imparcialidad; conducta.**

La Jueza o el Juez no solamente ha de ser imparcial sino que su conducta ha de excluir toda posible apariencia de que es susceptible de actuar a base de influencias de personas, grupos o partidos, o de ser influido por el clamor público, por consideraciones de popularidad o notoriedad, o por motivaciones impropias. Ha de tener siempre presente que su único empeño debe ser el de impartir justicia de conformidad con el Derecho aplicable, con absoluta ecuanimidad, y sin preocuparle el reconocimiento que pueda darse a su labor, ni la crítica injusta.

**En el ejercicio de su labor judicial, la Jueza o el Juez no deberá incurrir en conducta constitutiva de discrimen por motivo de raza, color, nacimiento, origen, condición socioeconómica, ideas políticas o religiosas, condición física, edad o género. Evitará que sus palabras o su conducta puedan interpretarse en forma alguna como manifestaciones de discrimen o prejuicio por tales motivos, y no deberá permitir manifestaciones de esa índole por parte del personal, oficiales del tribunal u otras personas que actúen bajo su dirección y control.**

La Jueza o el Juez deberá requerir de los abogados y las abogadas que, durante los procedimientos judiciales, se abstengan de manifestar, mediante palabra o conducta, discrimen o prejuicio alguno por razón de raza, color, nacimiento, origen, condición socioeconómica, ideas políticas o religiosas, condición física, edad o género, respecto a partes, testigos, abogados, abogadas y demás personas. Esta prohibición excluye alusiones a dichas condiciones o factores cuando se refieran a un asunto que está legítimamente en controversia.

La Jueza o el Juez no permitirá que los miembros de la profesión jurídica que actúan en su sala, hostiguen o intimiden a cualquier persona por las razones antes mencionadas.

La Jueza o el Juez hará todo lo posible para que los funcionarios o las funcionarias y empleados o empleadas del tribunal que actúen bajo su dirección actúen de conformidad con todos estos principios en la medida en que sean aplicables a sus labores. 4 L.P.R.A. Ap. IV-A C. XI.

**[3] Canon XII. Limitaciones; inhibición.**

La Jueza o el Juez no debe entender en procedimiento judicial alguno en que la ley le prohiba actuar, incluyendo, pero sin limitarse a cualesquiera de los casos siguientes:

(a) Por tener prejuicio o parcialidad hacia cualesquiera de las personas, los abogados o las abogadas que intervengan en el pleito o por haber prejuzgado el caso.

(b) Por estar directa o indirectamente interesado en el resultado del caso.

(c) ...

(d) ...

(e) ...

(f) ...

por incurrir en conducta que arroja dudas sobre su imparcialidad y que mina la confianza pública en el sistema de justicia, y (4) el Canon XV[4], por celebrar entrevistas privadas y tener comunicaciones indebidas con las partes.

La Comisión tomó en cuenta el historial profesional de la Jueza Castro Colón que hasta entonces estaba libre de falta alguna. Consideró, además, que la conducta referida de la Jueza no había resultado en beneficio alguno para ella, sino que más bien parecía ser el resultado de una actuación de buena fe de ésta. Por ello, la Comisión nos recomendó que se limitase la medida disciplinaria a una mera amonestación a la Jueza querellada.

## II

En defensa y justificación de su conducta en el caso de autos, la Jueza querellada alegó en esencia que desempeñó aquí una función de mediación, conforme a lo dispuesto en la Ley sobre Controversias y Estados Provisionales de Derecho, Ley Núm. 140 de 23 de julio de 1974, 32 L.P.R.A. sec. 2871 *et seq.* Sostuvo que actuó conforme con la práctica usual en este tipo de asunto, dentro de la función mediadora que le asigna la Ley referida, al llamar por teléfono y citar a la señora García Rodríguez para que compareciera a su despacho. Sostuvo, además, que el recurso de ordenarle a la Policía que acompañara a una parte al hogar de otra, para recoger en este caso ropa y documentos, era un procedimiento *ex parte* de rutina, que se utilizaba a diario para evitar incidentes de violencia. Más aun, alegó que este tipo de actuación no requería notificación ni vista para oír a la otra parte antes de expedir la orden. Alegó también que si la parte que obtiene la orden se presenta al lugar con un contingente de varios o muchos policías que puedan haber lucido amenazantes,

---

(g) Por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

... 4 L.P.R.A. Ap. IV-A C. XII.

[4] **Canon XV. Entrevistas privadas, comunicaciones.**

El Juez o la Jueza no debe celebrar entrevistas privadas con las partes o sus abogadas o abogados, ni permitir comunicaciones o argumentos de los mismos que pretendan influir su actuación judicial en asuntos de su competencia o bajo su consideración cuando los otros intereses que puedan ser afectados no estén representados ante él o ella, excepto en casos no contenciosos en los que deberá ser muy cauteloso o cautelosa. 4 L.P.R.A. Ap. IV-A C. XV.

eso no le era atribuible al juez o jueza que expidió la orden. Alegó, además, que tampoco resultaba reprobable la expedición de una resolución y orden que hacía una determinación de desacato e imponía una penalidad a base de la información que le proveyeron agentes de la Policía, sin haber citado ni oído a la parte contraria, porque como cuestión de hecho, nunca se puso en vigor dicha determinación, y la persona no sufrió perjuicio o daño alguno por causa de dicha orden de desacato. Finalmente, sostuvo la jueza querellada que en el caso de autos no aplican los Cánones de Ética Judicial porque supuestamente los errores de derecho que pueda cometer un juez o jueza en el ejercicio de su encomienda judicial no son violatorios de la ética judicial.

### III

No tiene razón la Jueza en sus alegaciones. La Jueza no tenía un fundamento válido para intervenir en este caso. No se podía justificar tal intervención con arreglo a la Ley sobre Controversias y Estados Provisionales de Derecho, <u>supra</u>, porque la intervención referida de la Jueza querellada no cumplía con los propios términos de dicha Ley.

La Ley sobre Controversias y Estados Provisionales de Derecho, <u>supra</u>, persigue "[e]l propósito de ...establecer un procedimiento de ley rápido, económico y eficiente para la adjudicación provisional de controversias...". Exposición de Motivos, 1974 L.P.R. 692 (énfasis suplido). Citando del Informe que había rendido la Comisión para el Estudio de los Tribunales del Consejo sobre la Reforma de la Justicia en Puerto Rico, la Asamblea Legislativa entendió conveniente legislar para que los jueces pudieran "intervenir y **adjudicar** controversias y crear estados provisionales de Derecho sin que constituya cosa juzgada, [dentro de] un trámite que supere la lentitud y complicaciones que caracterizan los problemas de tipo técnico evidenciarios y los gastos y costos que ello conlleva." <u>Id</u>. (énfasis suplido). En consecuencia, la Ley dispone que los "magistrados quedan facultados a intervenir, investigar, ventilar y resolver provisionalmente controversias a solicitud de parte interesada, **según el trámite dispuesto en esta ley**" en una serie de asuntos que se detallan taxativamente. Art. 2, 32 L.P.R.A. sec. 2872 (énfasis suplido).

La Ley referida dispone que para que el tribunal y el juez adquiera jurisdicción sobre una controversia o asunto, **tiene que iniciarse el procedimiento mediante una querella jurada verbal o escrita**, que de manera breve y sencilla exponga la posición del querellante. Art. 3(A), 32 L.P.R.A. sec. 2873(A). La Ley contempla la citación de las partes y testigos, bajo apercibimiento de desacato, para que comparezcan ante el juez o jueza dentro de cinco (5) días. Art. 3(B), 32 L.P.R.A. sec. 2873(B). Ese día el juez o jueza **"oirá verbalmente a las partes** y, si éstas ofreciesen testigos u otras pruebas, fijará fecha para la continuación de la vista... En dichas vistas los interesados podrán comparecer asistidos de abogados y disfrutarán del derecho de contrainterrogar a los testigos que declaren en su contra...". Art. 3(C), 32 L.P.R.A. sec. 2873(C).

El procedimiento descrito en la Ley sobre Controversias y Estados Provisionales de Derecho no es uno de "mediación" *sua sponte.* Se trata de un procedimiento adversativo y adjudicativo. La función del juez o la jueza es la de resolver una controversia, no la de mediar o servir de componedor con la esperanza de que las partes en controversia lleguen a un acuerdo. De más está decir, que todo el procedimiento provisto en la Ley aludida tiene que ajustarse al mandato constitucional del debido proceso de ley, como ingrediente jurídico esencial.

Ya antes hemos tenido la ocasión para atemperar la práctica de antaño que le reconocía a los magistrados la función de realizar investigaciones informales para promover transacciones de controversias entre particulares. En In re: Investigaciones Informales por los Jueces de Primera Instancia, 111 D.P.R. 86 (1981), resolvimos que "[n]o es parte de las funciones y prerrogativas de un juez de primera instancia la investigación sin querella formal y autorizada por Ley, de conflictos y divergencias entre personas." Id., a la pág. 88. Cuando en efecto un juez o jueza intervenga con dos partes para tratar de restablecer la armonía entre ellas, "[d]e someterse las partes a audiencia el juez les advertirá que no impondrá soluciones ni adjudicará derechos, y que su propósito es sólo explorar la posibilidad de una avenencia entre partes, evitándoles una controversia judicial. [Pero s]i la parte citada rehúsa la audiencia ofrecida por el juez negándose a participar, o si celebrada

la misma mantuvieren ambas partes sus posiciones de conflicto, dará el juez por terminada su intervención y remitirá el asunto a adjudicación de Derecho por los medios de enjuiciamiento que corresponda." Id.

En el caso de autos, se equivocó la jueza querellada al pensar que estaba facilitando un proceso de mediación bajo la Ley sobre Controversias y Estados Provisionales de Derecho, porque dicha ley no lo contempla. Su proceder tampoco se ajustó a las normas que para investigaciones informales hemos dispuesto antes, porque hubiese tenido que terminar su intervención tan pronto la señora García Rodríguez le expresó a la Jueza Castro Colón su inconformidad con el proceso iniciado por ésta. Por otro lado, la Jueza querellada nunca adquirió jurisdicción sobre el asunto en cuestión, en vista de que todo se inició con una llamada telefónica, y no mediante una querella jurada por el señor Méndez Otero, según lo requiere la Ley sobre Controversias y Estados Provisionales de Derecho. Sin jurisdicción fue que la jueza querellada se comunicó telefónicamente con la señora García Rodríguez, le citó al juzgado, expidió la orden a la Policía para que acompañaran al señor Méndez Otero a casa de la señora García Rodríguez a buscar ropa y documentos. Sin jurisdicción fue que la jueza querellada expidió la resolución y orden declarando a la señora García Rodríguez incursa en desacato e imponiéndole una penalidad, sin darle a ésta notificación ni oportunidad de defenderse, en violación del debido proceso de ley. Todo esto lo hizo a sabiendas de que el querellante, señor Méndez Otero, era una figura de relieve político en la comunidad, como Alcalde del Municipio de Río Grande.

La jueza querellada planteó que el curso de acción que siguió era rutinario. Alegó que a diario se expiden órdenes y citatorios como los que ella expidió en este caso, incluyendo la orden a la Policía para que acompañaran al señor Méndez Otero a buscar ropa y documentos a casa de la señora García Rodríguez. No son válidas tales alegaciones. Cuando se utiliza la autoridad judicial, **sin jurisdicción**, para colocar a disposición de un particular la autoridad y la fuerza que representa la presencia policíaca, sin brindar una oportunidad a la otra parte de expresarse, no sólo se actúa de modo *ultra vires*, sino que, además se proyecta sobre la ciudadanía la idea de que el poder judicial se presta al abuso del poder. "[P]or la posición que

ocupa un magistrado en la comunidad, sus actuaciones deben responder a normas que estimulen la confianza y el respeto de sus conciudadanos y que alejen, en todo momento, la más leve sospecha de que en sus actuaciones intervienen otras influencias que no sean estrictamente los méritos de la causa que juzga. ... Los jueces tienen la obligación de observar una conducta que tienda a conservar la confianza y el respeto que requiere el sistema judicial, especialmente en los Tribunales de Distrito, que es donde los ciudadanos tienen un contacto más estrecho con la administración de justicia." In re Liceaga, 82 D.P.R. 252, 259-60 (1961).

Tampoco tiene razón la querellada al indicar que no le era atribuible el operativo de varios policías que pudieron haber generado aprehensión y temor. Fue justamente su orden **sin jurisdicción**, *ultra vires*, lo que permitió la referida presencia de los policías. Tampoco puede escudarse de responsabilidad alegando que nunca se puso en vigor la determinación de desacato y la penalidad impuesta. Como bien señaló la Comisión, ya el daño estaba hecho. La mera resolución y orden al margen del debido proceso de ley minó la confianza y la fe en la institución judicial. El debido proceso de ley es garantía esencial frente a la arbitrariedad; le asegura a la persona particular que las decisiones que se toman son justas y que no habrá abuso de poder. Por eso, cuando se niega el debido proceso de ley, se actúa ilícitamente y se proyecta una falta de imparcialidad. Valentín v. Torres, 80 D.P.R. 463, 482 (1958).

Finalmente, tampoco tiene razón la querellada al alegar que no aplican aquí los Cánones de Ética Judicial. En In re Hernández Enríquez, 115 D.P.R. 472, 490 (1984), resolvimos que constituía una falta a la ética judicial el uso indebido de las prerrogativas de juez, que creaba la apariencia de favorecer a una parte dentro de un procedimiento adjudicativo. Ni siquiera las mejores motivaciones de lograr la armonía entre personas con intereses encontrados salvan la conducta de un juez si su conducta no está autorizada y proyecta una imagen de falta de parcialidad. En In re Hernández Enríquez, Id., señalamos: "[e]l querellado enfatiza que logró... el propósito de establecer la armonía entre las imputadas. Ese es un propósito legítimo, pero

su logro no debe realizarse a expensas de la imagen de imparcialidad y objetividad que un juez debe aparentar siempre." Id., a la pág. 489.

Además del mandato de imparcialidad y objetividad, son "la prudencia y la circunspección, atributos indispensables de un buen juez". In re Becerra, 104 D.P.R. 521 (1976). "La moderación, la prudencia y la autodisciplina son indispensables en la persona de un magistrado." In re De Castro, 100 D.P.R. 184 (1971). El conocimiento que tenía desde un principio la jueza querellada sobre el cargo político que desempeñaba el Alcalde Méndez Otero le debió conducir a ejercer mayor prudencia y circunspección en sus actuaciones, para evitar que éstas se pudieran interpretar erróneamente como dirigidas a reconocerle un privilegio especial al Alcalde, o como motivadas por el favoritismo político.


IV

En resumen, pues, tiene razón la Comisión en cuanto a estimar que la querellada Jueza Castro Colón cometió en este caso las violaciones referidas a los Cánones de Ética Judicial. La querellada no sólo actuó sin autoridad en sus intervenciones con el asunto en cuestión, sino que, además, su conducta atentó contra la imagen de imparcialidad que es esencial para que la judicatura merezca la confianza y el respeto público que son tan necesarios para la marcha eficaz del sistema judicial.

Por todo lo anterior, se dictará sentencia para **censurar severamente** a la Jueza Castro Colón; para instruirle que estudie a fondo los Cánones de Ética Judicial y la jurisprudencia interpretativa de éstos, y para apercibirle de que cualquier violación futura de esos Cánones conllevará sanciones mayores.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

In re:

Nylda Castro Colón                      AD-1999-02

SENTENCIA

San Juan, Puerto Rico, a 11 de septiembre de 2001.

Por las razones expuestas en la Opinión Per Curiam que antecede, se dicta sentencia para **censurar severamente** a la Jueza Nylda Castro Colón; para instruirle que estudie a fondo los Cánones de Ética Judicial y la jurisprudencia interpretativa de éstos; y para apercibirle de que cualquier violación futura de esos Cánones conllevará sanciones mayores.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Asociado señor Rivera Pérez está inhibido. El Juez Presidente señor Andréu García no intervino.

                        Isabel Llompart Zeno
                           Secretaria del Tribunal Supremo