Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| SONO X-RAY RADIOLOGY GROUP H/N/C QUADRANGLE IMAGING CENTER Peticionario<br><br>v.<br><br><br>TRIPLE S SALUD, INC; TRIPLE S ADVANTAGE, INC. Recurridos | KLCE202300693 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso número: SJ2022CV07829<br><br><br>Sobre: INJUCTION PRELIMINAR Y PERMANENTE; SENTENCIA DECLARATORIA; COBRO DE DINERO; INCUMPLIMIENTO DE CONTRATO; DAÑOS; ENRIQUECIMIENTO INJUSTO |

Panel integrado por su presidente, el Juez Rivera Colón, el Juez Ronda Del Toro y la Jueza Díaz Rivera.

Díaz Rivera, Jueza Ponente

**R E S O L U C I Ó N**

En San Juan, Puerto Rico, a 31 de julio de 2023.

Comparece ante *nos*, Sono X-Ray Radiology Group h/n/c Quadrangle Imaging Center (QIC) y nos solicita que revisemos la *Resolución* emitida y notificada el 19 de mayo de 2023, por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan. Mediante dicho dictamen, el TPI declaró *No Ha Lugar* la *Moción de Recusación* que presentó QIC.

Por los fundamentos que se exponen a continuación, se *expide* el auto de *certiorari* y se *confirma* la *Resolución* recurrida.

**I.**

El 29 de agosto de 2022, QIC presentó una *Demanda* en contra de Triple-S Salud, Inc. y Triple-S Advantage, Inc. (Triple-S). La *Demanda* fue presentada por conducto del Lcdo. Cesar T. Alcover

Número Identificador

RES2023_____

Acosta y de la Lcda. Carla L. Loubriel. En apretada síntesis, QIC impugnó los resultados de una auditoría que le realizó Triple-S entre el 16 de julio de 2021 y el 4 de agosto de 2022. Consecuentemente, QIC solicitó una sentencia declaratoria y daños contra Triple-S por la presunta ilegalidad del procedimiento de auditoría que realizaron y los recobros ascendentes a $296,384.15, que Triple-S pretende realizar. Además, solicitó un *injunction* preliminar y permanente para que Triple-S cesara y desistiera de recobrar la deuda resultante del procedimiento de auditoría. Finalmente, QIC incluyó causas de acción en cobro de dinero y daños por $195,734.98.

El 1 de septiembre de 2022, Triple-S presentó una *Moción en Solicitud de Descalificación*. En esta, solicitó la descalificación del Lcdo. Cesar T. Alcover Acosta y de la Lcda. Carla L. Loubriel, así como del Bufete Casellas Alcover & Burgos, PSC., como abogados de QIC. Triple-S sostuvo que, existía un conflicto de intereses por representación sucesiva adversa. Adujo que, el Lcdo. Cesar T. Alcover Acosta y la Lcda. Carla L. Loubriel estaban impedidos de representar a QIC porque ambos fueron abogados de Triple-S en el pasado.

Así las cosas, el 5 de septiembre de 2022, QIC presentó una *Oposición a Solicitud de Descalificación*. Arguyó que, la solicitud de descalificación que presentó Triple-S era insuficiente en derecho, pues no cumplía con el peso de la prueba para invocar la descalificación bajo el Canon 21, en su vertiente de representación sucesiva adversa. Así pues, QIC indicó que la solicitud de Triple-S y la evidencia que le acompañaba, estaba plagada de generalidades y representaciones falsas e incompletas, tendientes a inducir al TPI a error, pues descansaba en la coincidencia de sujetos y de temas entre las dos (2) representaciones.

Luego de varios incidentes procesales, el 23 de septiembre de 2022, el TPI emitió una *Resolución* mediante la cual declaró *Ha Lugar* la *Moción en Solicitud de Descalificación*. Consecuentemente, ordenó la descalificación del Lcdo. Cesar T. Alcover Acosta, de la Lcda. Carla L. Loubriel y del Bufete Casellas Alcover & Burgos, PSC., bajo la presunción de confidencias compartidas. El 11 de octubre de 2022, QIC presentó una *Moción de Reconsideración.* En igual fecha, el TPI declaró *No Ha Lugar* la *Moción de Reconsideración* que presentó QIC.

Posteriormente, el 24 de octubre de 2022, QIC presentó una *Petición de Certiorari* ante este Tribunal. El 30 de noviembre de 2022, un panel hermano de este Tribunal expidió el auto y revocó la *Resolución* que emitió el TPI el 23 de septiembre de 2022. En dicha *Resolución* se determinó que, de las mociones de las partes en torno a la descalificación surgía una controversia sobre la suficiencia de la prueba que no podía ser resuelta sin un desfile de prueba. Así, se devolvió el caso al TPI para que llevara a cabo una vista evidenciaría.

El 2 de febrero de 2023, Triple-S presentó un *Escrito Uniéndose a Representación Legal y Solicitud de Señalamiento de Vista sobre el Estado de los Procedimientos*. En la misma, solicitó al TPI, entre otras cosas, que señalara una vista sobre el estado de los procedimientos, a los fines de calendarizar el descubrimiento de prueba para la vista evidenciaría que ordenó este Tribunal. Ese mismo día, el TPI emitió una *Orden* mediante la cual señaló la vista sobre el estado de los procedimientos para el 15 de febrero de 2023.

El 8 de febrero de 2023, QIC presentó una *Solicitud de Transferencia de Vista*. Consecuentemente, el TPI emitió una *Orden* mediante la cual transfirió la vista para el 14 de marzo de 2023. Así las cosas, el 9 de marzo de 2023, QIC presentó una *Solicitud de Recusación o Inhibición del Honorable Juez Superior Anthony Cuevas*

*Ramos.* En esta, QIC adujo que es razonable concluir objetivamente y desde la perspectiva de un observador bien informado, objetivo y razonable, que el Honorable Juez Anthony Cuevas Ramos puede haber prejuzgado la procedencia de la solicitud de descalificación y, como mínimo, puede dar la apariencia de que así lo puede haber hecho, pues resolvió inicialmente con tan solo una *scintilla* de prueba y utilizando un lenguaje categórico, absoluto y contundente. Asimismo, esbozó que los hechos procesales del caso abonaban a las dudas sobre su imparcialidad, ya que le ordenó replicar a la moción de descalificación no en un plano razonable sino *inmediatamente* y que había despachado con *No Ha Lugar* la extensa y fundamentada *Moción de Reconsideración* en menos de treinta (30) minutos de ser presentada.

El 16 de marzo de 2023, Triple-S presentó una *Oposición a Solicitud de Recusación o Inhibición [...].* Manifestó que, la solicitud de recusación no se presentó dentro del término de veinte (20) días desde que la parte solicitante conoció de la causa de la recusación. Señaló que, la solicitud es insuficiente por no hacer referencia a hechos específicos en los cuales se fundamenta y que QIC pretende hacer *fórum shopping* y *judge shopping,* al intentar elegir un juez o una jurisdicción que le resulte más favorable. Añadió que, el hecho de que un juez haya tenido unas experiencias anteriores que tengan alguna relación con la controversia ante el juez no es razón para inhibirse ni declarar con lugar una recusación.

Así, el 23 de marzo de 2023, QIC presentó una *Réplica a Oposición a Solicitud de Recusación o Inhibición.* El 19 de mayo de 2023, el TPI emitió una *Resolución* mediante la cual declaró *No Ha Lugar* la *Solicitud de Recusación o Inhibición del Honorable Juez Superior Anthony Cuevas Ramos.* Insatisfechos con esa determinación, el 20 de mayo de 2023, la parte peticionaria presentó

un recurso de *Certiorari* ante este Tribunal y alegó la comisión de los siguientes errores:

**A. Erró y abusó de su discreción el TPI al declarar "No Ha Lugar" la solicitud de recusación o inhibición sin sopesar los argumentos constitucionales presentados por los abogados de QIC.**

**B. Erró y abusó de su discreción el TPI al declarar "No Ha Lugar" la solicitud de recusación o inhibición al concluir que no se ha prejuzgado la controversia.**

**C. Erró y abusó de su discreción el TPI al declarar "No Ha Lugar" la solicitud de recusación o inhibición al concluir que no existe la apariencia de parcialidad para juzgar la controversia.**

Examinado el recurso de *Certiorari*, este Tribunal emitió una *Resolución* el 29 de junio de 2023, concediéndole un término de veinte (20) días a la parte recurrida para que expresara su posición al recurso. El 17 de julio de 2023, la parte recurrida presentó su *Alegato en Oposición a: "Petición de Certiorari"*. Con el beneficio de la comparecencia de todas las partes, procedemos a resolver.

**II.**

**A. Certiorari**

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009).

A esos efectos, la Regla 52.1 de Procedimiento Civil (32 LPRA Ap. V) limita la autoridad de este Tribunal de Apelaciones para revisar las órdenes y resoluciones interlocutorias que dictan los tribunales de instancia por medio del recurso discrecional del *certiorari*. En lo pertinente, la precitada disposición reglamentaria, *supra,* dispone que:

> El recurso de certiorari para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones

cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia, al denegar la expedición de un recurso de certiorari en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Si ninguno de esos elementos está presente en la petición ante la consideración del Tribunal, procede abstenerse de expedir el auto, de manera que se continúen los procedimientos del caso, sin mayor dilación, ante el Tribunal de Primera Instancia. *García v. Asociación*, 165 DPR 311, 322 (2005); *Meléndez Vega v. Caribbean Intl. News*, 151 DPR 649, 664 (2000); *Lluch v. España Service Sta.*, 117 DPR 729, 745 (1986).

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari*. En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*, o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.

B. Si la situación de hechos planteada es la más indicada para el análisis del problema.

C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E.   Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F.   Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G.   Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari*, por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra*, pág. 918.

Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró*, 165 DPR 324, 334 (2005).  El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago*, 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago, supra*, pág. 581; *S.L.G. Flores, Jiménez v. Colberg*, 173 DPR 843 (2008).

**B. La recusacion y la Regla 63 de Procedimiento Civil**

La figura del juez en nuestra sociedad cumple una particular función de equilibrio en los conflictos humanos, toda vez que le corresponde "discernir el bien del mal, para distinguir lo que puede y debe hacerse, de aquello que debe ser evitado". *Martí Soler v. Gallardo Álvarez,* 170 DPR 1, 7 (2007). Por lo tanto, se ha concluido que nuestro estado de derecho "se asienta sobre el recto y sabio

ejercicio de las funciones judiciales", lo cual a su vez resulta en que se exija la imparcialidad del juzgador como corolario del debido proceso de ley. Íd., págs. 7-8. Esta exigencia de imparcialidad, al igual que su apariencia, también forma parte de importantes principios éticos. *Lind v. Cruz*, 160 DPR 485, 490 (2003).

En aras de promover la política pública de ofrecer a todo ciudadano el derecho a que su causa sea ventilada sin prejuicio alguno por parte del magistrado competente, la Regla 63.1 de Procedimiento Civil (32 LPRA Ap. V) enumera las causas por las cuales un juez o jueza deberá inhibirse de intervenir en un pleito. Al respecto y en lo aquí pertinente, el estatuto dispone como sigue:

> A iniciativa propia, o a recusación de parte, un juez o jueza deberá inhibirse de actuar en un pleito o procedimiento en cualquiera de los casos siguientes:
>
> (a) Por tener prejuicio o parcialidad hacia cualquiera de las personas o los abogados o abogadas que intervengan en el pleito o por haber prejuzgado el caso;
>
> [...]
>
> (j) por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia. Regla 63.1 de Procedimiento Civil, *supra*.

Por su parte, la Regla 63.2 de Procedimiento Civil (32 LPRA Ap. V) esboza las normas inherentes al perfeccionamiento de una solicitud de inhibición o recusación, así como el proceso a seguir una vez se presenta la misma. En específico, la precitada regla reza como sigue:

> (a)  Toda solicitud de recusación será jurada y se presentará ante el juez o jueza recusado(a) dentro de veinte (20) días desde que la parte solicitante conozca de la causa de la recusación. La solicitud incluirá los hechos específicos en los cuales se fundamenta y la prueba documental y declaraciones juradas en apoyo a la solicitud. Cuando la parte promovente de la recusación no cumpla con las formalidades antes señaladas, el juez o jueza podrá continuar con los procedimientos del caso.
>
> (b)  Una vez presentada la solicitud de recusación, si el juez o jueza recusado(a) concluye que procede su inhibición, hará constar mediante resolución escrita los incisos (a) a (i) de la Regla 63.1 de este apéndice aplicable, en su defecto, la razón específica para su inhibición bajo el inciso (j) y la notificará a todas las partes. El caso será asignado a otro juez o jueza.

(c) Si el juez o jueza concluye que no procede su inhibición, se abstendrá de continuar actuando en su capacidad de juez o jueza en el caso y remitirá los autos del mismo al juez administrador o jueza administradora para la designación de un juez o jueza que resuelva la solicitud de recusación. La recusación se resolverá dentro del término de treinta (30) días de quedar sometida.

(d)  Una vez un juez o jueza haya comenzado a intervenir en un caso, no podrán unirse al caso los abogados o abogadas cuya intervención pueda producir su recusación. Regla 63.2 de Procedimiento Civil, *supra.*

De otra parte, procede señalar que el Canon 20 de Ética Judicial, 4 LPRA Ap. IV-B, atiende lo que constituye la apariencia de imparcialidad judicial. Al respecto, el Canon 20 establece, entre otras cosas, que:

[l]as juezas y los jueces entenderán y adjudicarán los asuntos que se les asignen, salvo aquellos en lo que la ley requiera su inhibición y en cualesquiera de los casos siguientes, pero sin limitarse a estos:

(a)  por tener prejuicio o parcialidad hacia cualquiera de las personas, las abogadas o los abogados que intervengan en el pleito o por haber prejuzgado el caso.

[...]

(i)  por cualquier otra causa que pueda razonablemente arrojar dudas sobre su imparcialidad para adjudicar o que tienda a minar la confianza pública en el sistema de justicia.

Según establece nuestro ordenamiento jurídico, se incurre en violación de el Canon 20 de Ética Judicial cuando, entre otras razones, las juezas o los jueces exhiben una conducta que arroja dudas sobre su imparcialidad y que mina la confianza pública en el sistema de justicia. *In re Castro Colón*, 155 DPR 110 (2001). Asimismo, la parcialidad aducida a fin de que un juez no intervenga en determinado asunto debe ser en el ámbito personal. *Mun. de Carolina v. CH Properties*, 200 DPR 701 (2018). Es decir, la posibilidad de que el magistrado haya prejuzgado la controversia significa que sus visiones personales controlen la adjudicación del caso, independientemente de la evidencia que se le presente y del

derecho aplicable. *Dávila Nieves v. Meléndez Marín*, 187 DPR 750 (2013).

La solicitud de inhibición judicial se circunscribe por los principios de buena fe, abuso de derecho e incuria, por lo que una solicitud de recusación debe apoyarse en hechos comprobables, a la luz de la totalidad de las circunstancias. *Mun. de Carolina v. CH Properties*, *supra*. Véase, además, *Martí Soler v. Gallardo Álvarez,* 170 DPR 1 (2007).

La jurisprudencia vigente reconoce que "la mera apariencia de parcialidad constituye un motivo suficiente para la inhibición o recusación de un juez." *Mun. de Carolina v. CH Properties*, *supra*, pág. 713; *Lind v. Cruz*, 160 DPR 485 (2003). Ello es así, toda vez que los tribunales de justicia tienen el deber de velar porque la consideración de las prerrogativas de quienes acuden a su auxilio esté libre de toda sospecha. *Mun. de Carolina v. CH Properties*, *supra*. Es en el ideal de la protección a la confianza pública que, a su vez, se exige una administración apropiada de los casos. Íd.

No obstante, al determinar si existe o no prejuicio personal de parte de un juez, demanda un análisis de la totalidad de las circunstancias a la luz de la prueba presentada. *Lind v. Cruz, supra,* pág. 491. Así, se utilizará para ello la norma del buen padre de familia o de la persona prudente y razonable. Íd. Corresponde entonces determinar si una persona prudente y razonable, situada en las circunstancias del juez cuya recusación de solicita, estaría impedido de adjudicar el caso que tiene ante sí "con la imparcialidad y neutralidad que nuestro ordenamiento jurídico le exige a todo magistrado". Íd., pág. 494.

**III.**

En este caso, la parte peticionaria nos solicita la revisión de la *Resolución* emitida el 19 de mayo de 2023. Mediante esta, el TPI

resolvió que no procedía la recusación del Juez Anthony Cuevas Ramos. Por estar relacionados entre sí, discutiremos los tres (3) señalamientos de error en conjunto. En su recurso, la parte peticionaria señala que el TPI erró y abusó de su discreción al declarar *No Ha Lugar* la solicitud de recusación o inhibición sin sopesar los argumentos constitucionales presentados por sus abogados, al concluir que no se ha prejuzgado la controversia y que no existe la apariencia de parcialidad para juzgar la controversia.

Nuevamente, las razones para que QIC solicitara la recusación del Juez Anthony Cuevas Ramos fueron por que este pudo haber prejuzgado la procedencia de la solicitud de descalificación y, como mínimo, puede dar la apariencia de que así lo puede haber hecho, pues resolvió inicialmente con tan solo una *scintilla* de prueba y utilizando un lenguaje categórico, absoluto y contundente. Además, porque los hechos procesales del caso abonaban a las dudas sobre su imparcialidad, ya que le ordenó a la parte peticionaria replicar a la moción de descalificación no en un plano razonable sino *inmediatamente* y que había despachado con *No Ha Lugar* la extensa y fundamentada *Moción de Reconsideración* en menos de treinta (30) minutos de ser presentada.

Del expediente ante *nos* surge que, un panel hermano de este Tribunal revocó la *Resolución* emitida por el TPI mediante la cual descalificó al Lcdo. Cesar T. Alcover Acosta, de la Lcda. Carla L. Loubriel y del Bufete Casellas Alcover & Burgos, PSC., bajo la presunción de confidencias compartidas. Consecuentemente, este Tribunal le ordenó al TPI llevar a cabo una vista evidenciaría, pues de las mociones de las partes en torno a la descalificación surgía una controversia sobre la suficiencia de la prueba que no podía ser resuelta sin un desfile de prueba.

QIC plantea que, solicitó la recusación del Juez Anthony Cuevas Ramos porque este pudo haber prejuzgado la procedencia de la solicitud de descalificación y, como mínimo, puede dar la apariencia de que así lo puede haber hecho, pues resolvió inicialmente con tan solo una *scintilla* de prueba y utilizando un lenguaje categórico, absoluto y contundente. Del expediente ante *nos*, no surge una base fáctica razonable que genere dudas sobre la imparcialidad del Juez. El hecho de que el Juez Anthony Cuevas Ramos haya resuelto la solicitud de descalificación con tan solo una *scintilla* de prueba y utilizando un lenguaje categórico, absoluto y contundente, no es indicio de que este está parcializado o tenga algún prejuicio. De ser así, los jueces estarían imposibilitados de utilizar un lenguaje categórico, absoluto y contundente al momento de resolver los asuntos ante su consideración.

Por lo tanto, coincidimos con la determinación del TPI de que el mero señalamiento de que el juez adjudicó credibilidad a la prueba de la parte recurrida en un juicio anterior no necesariamente es una razón suficiente para remover al magistrado de su función adjudicativa. No debemos perder de perspectiva que, las actuaciones judiciales pueden ser revisadas mediante los recursos judiciales adecuados para ello.

De otro lado, es importante destacar que la parte peticionaria presentó su solicitud de recusación fuera del término de veinte (20) días que establece la Regla 63.2 de Procedimiento Civil, *supra.* Ello, por cuanto transcurrió más de veinte (20) días desde que QIC advino en conocimiento de los presuntos fundamentos de la recusación. Es decir, la parte peticionaria, como mínimo, advino en conocimiento de los presuntos fundamentos de la recusación el 2 de febrero de 2023. Mientras, la *Solicitud de Recusación o Inhibición del Honorable Juez Superior Anthony Cuevas Ramos* se presentó el 9 de marzo de

2023. De manera que, la parte peticionaria tenía hasta el 22 de febrero de 2023 para solicitar la recusación del Juez Anthony Cuevas Ramos.

Tras evaluar el recurso de epígrafe, al amparo de los criterios establecidos para que este Tribunal expida el auto de *certiorari,* bajo la Regla 40 de nuestro Reglamento, *supra,* no hallamos indicio de que el TPI haya actuado de forma arbitraria, caprichosa, haya abusado al ejercer su discreción, o cometido algún error de Derecho.

**IV.**

Por los fundamentos antes expuestos, se *expide* el auto de *certiorari* y se *confirma* la *Resolución* recurrida. Se devuelve el caso al TPI para que se lleve a cabo la vista evidenciaría que ordenó un panel hermano de este Tribunal en la *Resolución* emitida el 30 de noviembre de 2022.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones